AMIDZICH and wife, Appellants, v. CHARTER OAK FIRE INSURANCE COMPANY, Respondent.

*No. 146.  Argued September 4, 1969.—Decided September 30, 1969.*
(Also reported in 170 N. W. 2d 813.)

For the appellants there was a brief and oral argument by *S. Raymond Spitz* of Milwaukee.

For the respondent there was a brief by *Ames, Riordan, Crivello & Sullivan* of Milwaukee, and oral argument by *Frank T. Crivello*.

HEFFERNAN, J. The essence of the appellants' argument is that the phrase, "physical contact," as used in the insurance policy is ambiguous and that in view of such ambiguity a proper construction would provide coverage in a situation where an insured is forced off the road by another motor vehicle without the occurrence of an actual collision. Plaintiffs urge that such construction is in accordance with the underlying policy of the Wisconsin uninsured motorist statute, sec. 204.30 (5), Stats. 1965, and that where any ambiguity exists, the phrase should be construed in the light most favorable to the insured and in a manner consonant with the purpose of the underlying statute. The plaintiffs also take the position that the only justification for the "physical contact" requirement is the prevention of fraudulent claims and that, since there is not a scintilla of fraud in this case, the requirement of "physical contact" is inapplicable. Appellants, in addition, rely on various commentators and scholars who conclude that the requirement of "physical contact" and a literal interpretation of that term leads to results which are inequitable and contrary to public policy. Typical of these statements is the following:

"An alert, athletic pedestrian who barely manages to avoid contact with such a car by leaping through a plate glass display window receives the unkindest cuts of all for his efforts, but cannot qualify. Snubbed, too, is the driver who miraculously manages to steer his car off the highway and thus avoid a collision with an oncoming vehicle traveling in the wrong lane, but in so doing effects a rather abrupt stop against an unyielding bridge abutment. Seemingly, then, this requirement once again illustrates vividly the bitter truth of that time-worn pronouncement that 'close ones only count in horseshoes.'" Notman, *Uninsured Motorist Coverage: A Current Analysis*, 55 Ill. Bar Journal 142, 147 (October 1966).

For the interpretation of the phrase, "physical contact," initial resort must obviously be to the contract of

insurance. In its pertinent part the contract of insurance provides that the insurer shall:

". . . pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile . . . ."

The policy defines an uninsured automobile as:

"(a) an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or
"(b) a hit-and-run automobile."

A "hit-and-run automobile" is further defined as:

". . . an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident. . . ."

The policy outlines other preliminary steps that a claimant must take to invoke coverage under this portion of the policy, but they are not at issue in this litigation.

The Wisconsin statute which requires the issuance of policies that provide uninsured motorist coverage is sec. 204.30 (5) 1965. It provides:

"204.30 Accident insurance, highway traffic, policy provisions.
"(5) UNINSURED MOTORIST COVERAGE. (a) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death in the amount of $10,000

per person and $20,000 per accident under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. The named insured has the right to reject such coverage. Unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer."

We are satisfied that the phrase in the policy, "physical contact," is intended to express no other meaning than that which is plainly apparent on its face. Despite the forceful arguments of the appellants, we conclude that there is no reasonable construction to this phrase that supports other than the requirement that there be an actual striking between the "hit-and-run automobile" and the insured's vehicle, at least in a situation where only two vehicles are involved. The very term, "hit-and-run," contained in the policy itself supports the plain meaning that we attribute to the term, "physical contact." The word, "hit," is defined in Webster's Third New International Dictionary as:

"1a: a blow striking an object aimed at—contrasted with *miss* . . . b: an impact of one thing against another: collision. . . ."

The policy clearly requires a touching or contact between the two vehicles to constitute a hit or "physical contact." When a plain meaning of a word of a statute or contract is apparent, we need not resort to either construction or case law to bolster our recognition of that plain meaning. 17 Am. Jur. 2d, *Contracts,* sec. 241, p. 625; *Thurston v. Burnett & Beaver Dam Farmers' Mut. Fire Ins. Co.* (1898), 98 Wis. 476, 478, 74 N. W. 131. The overwhelming authority of appellate courts in this country is in accord with this interpretation. Typical

of these cases are *Lawrence v. Beneficial Fire & Casualty Ins. Co.* (1968), 8 Ariz. App. 155, 444 Pac. 2d 446; *Prosk v. Allstate Ins. Co.* (1967), 82 Ill. App. 2d 457, 226 N. E. 2d 498; and *Roloff v. Liberty Mut. Ins. Co.* (C. A. La., 4th Cir., 1966), 191 So. 2d 901. In each of these cases the plaintiff was forced off the road without actual contact or collision with the hit-and-run automobile. Each case involved an insurance policy containing an uninsured motorist provision with a "physical contact" limitation.

The plaintiffs, of course, contend that the interpretation which we give the term, "physical contact," is so strict as to inequitably defeat the legislative intention to compensate injured plaintiffs who have no recourse against the actual tortfeasor. We have on numerous occasions expressed the opinion that it is a proper concern of the state that plaintiffs who have sustained injuries through no fault of their own be compensated by the tortfeasor. *Wilcox v. Wilcox* (1965), 26 Wis. 2d 617, 631, 133 N. W. 2d 408. Courts, however, do not have the prerogative to engage in the equitable redrafting of contracts when the terms of those contracts are plain on their face. In the *Inter-Insurance Exchange v. Westchester Fire Ins. Co.* (1964), 25 Wis. 2d 100, 104, 130 N. W. 2d 185, we said:

". . . it is fundamental that no contract of insurance should be rewritten by construction to bind an insurer to a risk which it did not contemplate and for which it was not paid . . . ."

In *Tischendorf v. Lynn Mut. Fire Ins. Co.* (1926), 190 Wis. 33, 42, 208 N. W. 917, this court stated:

"The liability of an insurance company is based upon a contract entered into between the parties and must be governed by the provisions thereof, and, where such provisions are clear and unambiguous, the rule of strict construction against insurance companies cannot be resorted to for the purpose of modifying the contract or of creating a new contract."

Nor could the state, even through legislative means, bind the parties to a contract they had not bargained for, since art. I, sec. 10, of the United States Constitution provides that, "No state shall . . . pass any . . . law impairing the obligation of contracts . . . ."

The words, "physical contact," are not words of art, and their plain meaning is such that we must hold that no coverage is afforded by the policy in the absence of at least a minimal touching between the two automobiles.

In addition to the argument of ambiguity, the plaintiff urges us that coverage be afforded because it is clearly the legislative intention of sec. 204.30 (5), Stats., to protect the victim of a hit-and-run accident against a fleeing tortfeasor. Although a legislature or a court cannot *ex post facto* compel the performance of conditions in a contract which the parties did not contemplate or bargain for, coverages omitted from an insurance contract may nevertheless be compelled and enforced as though a part thereof where the inclusion of such coverage is required by a properly enacted statute. In such case a policy of insurance omitting a required coverage will be enforced as though it had been written in accordance with the legislative prescription. 44 C. J. S., *Insurance,* sec. 302, pp. 1215, 1216; *Zippel v. Country Gardens, Inc.* (1952), 262 Wis. 567, 55 N. W. 2d 903; *Sandstrom v. Estate of Clausen* (1951), 258 Wis. 534, 46 N. W. 2d 831. In the instant case, however, we see no failure to incorporate all that the statute requires. In fact, we deem the policy coverage afforded by the defendant, The Charter Oak Fire Insurance Company, to be in excess of the minimum required by sec. 204.30 (5). Sec. 204.30 (5) requires that coverage be provided for the protection of persons who are legally entitled to recover damages from the owners of *uninsured motor* vehicles. A strict construction of this statute could require that there be proof that the vehicle whose driver caused the injury was in fact uninsured. The policy of insurance places no such onerous

burden upon a claimant but rather expresses the insurer's willingness to assume without proof that a "hit-and-run" vehicle is in fact uninsured. As a consequence, we conclude that the policy represents not a constriction of the coverage required by statute but a broadening. There is no requirement either by specific legislation or by necessary implication that would lead us to conclude that it was the legislative intent that coverage must be afforded in the absence of "physical contact."

Apparently the thinking of the underwriters was that a person who forced another automobile off the road without contact could under some circumstances have done it unknowingly and might, therefore, have left the scene even though fully insured, but one who made actual physical contact would know of his collision with another vehicle and might well have left the scene because he had no insurance. Persuasive arguments could be made that statutory requirements to afford coverage to the plaintiff should be provided. The present statute, however, does not require such coverage, nor does the policy as written provide for it.

The plaintiffs also complain that the trial court erred in refusing to hear arguments on their motion for review. We see no evidence that it failed to consider the arguments advanced and, in any event, the disposition of a motion to review is discretionary. Sec. 269.46 (3), Stats., provides:

"All judgments and court orders *may* be reviewed by the court at any time within 60 days from service of notice of entry thereof, but not later than 60 days after the end of the term of entry thereof." (Emphasis supplied.)

We pointed out in *Padek v. Thornton* (1958), 3 Wis. 2d 334, 339, 340, 88 N. W. 2d 316:

"The relief sought under the statute is addressed to the discretion of the trial court and upon appeal from its

order this court will only reverse where there has been a clear abuse of discretion."

We are satisfied that there was no abuse of discretion in the disposition of the motion for review.

*By the Court.*—Orders affirmed.