Michael G. HAYNE, Plaintiff-Appellant,

v.

PROGRESSIVE NORTHERN INSURANCE COMPANY, a foreign corporation, Defendant-Respondent.

Supreme Court

*No. 82–1888. Argued September 7, 1983.— Decided November 1, 1983.*

(Also reported in 339 N.W.2d 588.)

For the plaintiff-appellant there were briefs by *Michael J. Gross* and *Hippenmeyer, Reilly, Arenz, Molter, Bode &*

*Gross, S.C.* Waukesha, and oral argument by *Michael J. Gross.*

For the defendant-respondent there was a brief by *Jeffrey A. Schmeckpeper, Patti J. Kurth* and *Kasdorf, Dall, Lewis & Swietlik, S.C.,* Milwaukee, and oral argument by *Mr. Schmeckpeper.*

WILLIAM A. BABLITCH, J.   This is an appeal from a judgment of the circuit court for Waukesha county, Honorable Neal Nettesheim, Judge, entered on September 16, 1982.   The trial court dismissed Michael Hayne's complaint against Progressive Northern Insurance Co. (Progressive).   Hayne appealed the judgment to the court of appeals.   On December 23, 1982, Hayne filed a petition to bypass the court of appeals, which this court granted on January 11, 1983.

The sole issue on appeal is whether sec. 632.32(4)(a) 2.b., Stats., requires uninsured motorist coverage for an accident involving an insured's vehicle and an unidentified motor vehicle when there was no physical contact between the two vehicles.

We hold that sec. 632.32(4)(a) 2.b., Stats., does not mandate such coverage.   We therefore affirm the judgment of the circuit court.

The stipulated facts indicate that on June 20, 1981, Hayne was operating a motor vehicle owned by Gregg Luedtke with Luedtke's consent.   While Hayne was driving the vehicle on a county highway, he swerved to avoid an oncoming vehicle.   Hayne lost control of his vehicle and the vehicle overturned.   There was no physical contact between Hayne's vehicle and the other vehicle.   Both the vehicle that Hayne swerved to avoid and its driver are unidentified.

Hayne sustained injuries as a result of the accident. He subsequently filed a claim against Progressive for payments for his medical expenses and for damages

pursuant to the uninsured motorist coverage provisions of an automobile insurance policy that Progressive had issued to Luedtke, which covered the vehicle Hayne was operating at the time of the accident. Progressive denied the claim because it determined that the provisions of Luedtke's policy did not provide coverage for that type of accident.

Hayne filed a complaint against Progressive, in which he sought compensatory and punitive damages. Hayne subsequently filed an amended complaint against Progressive seeking only compensatory damages. Progressive filed a motion for summary judgment, arguing that the following provisions of the insurance policy it issued to Luedtke precluded Hayne's claim:

"Part IV—Uninsured Motorists
"Coverage 1—Uninsured Motorists
"Coverage
"We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle up to the limit of liability as defined in this part. The bodily injury must be caused by accident and arise out of the ownership, maintenance or driving of the uninsured motor vehicle.
". . .
"As used in this Part:
". . .
"3. 'Uninsured motor vehicle' means a motor vehicle which is:
". . .
"d. 'hit-and-run motor vehicle'
". . .
"4. 'Hit-and-run motor vehicle' means vehicle whose operator and owner are unknown, which strikes
"a. you or a relative; or
"b. your insured car, or a vehicle which you or a relative is occupying, resulting in injury to an insured person. [1]
". . . ."

---

[1] The parties do not argue that Hayne would not be considered an "insured person" under the terms of the insurance policy

Progressive argued that because there was no striking or physical contact between the vehicle Hayne was driving and the unidentified vehicle, the policy did not provide coverage for the type of accident Hayne was involved in. Progressive also contended that our prior decision in *Amidzich v. Charter Oak Fire Insurance Co.*, 44 Wis. 2d 45, 170 N.W.2d 813 (1969), supported its assertion that the uninsured motorist provision of Luedtke's policy precluded Hayne's claim.

Hayne argued that he was entitled to coverage under secs. 632.32(4)(a)1. and 632.32(4)(a)2.b., Stats., 1979–80, which provided in pertinent part:[2]

"(4) REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

"(a) Uninsured motorist. 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $15,000 per person and $30,000 per accident. The in-

Progressive issued to Luedtke. Part IV of the policy defines "insured person", and includes within that definition any person occupying the insured car. Part IV also states, "However, no person shall be considered an insured person if the person driving your insured car does so without your expressed permission." The parties stipulated that Hayne was driving Luedtke's insured vehicle with Luedtke's permission at the time of the accident.

[2] Sections 632.32(4)(a)1. and 632.32(4)(a)2.b., Stats. 1979–80, were in effect at the time Hayne filed his amended complaint. Section 632.32(4)(a)1. was amended prior to the entry of judgment in this case by ch. 284, Laws of 1981, effective May 1, 1982. This amendment changed the minimum liability limits from $15,000 per person to $25,000, and from $30,000 per accident to $50,000. Section 632.32(4)(a)2.b. remained the same.

surer may increase the coverage limits provided under this paragraph up to the bodily injury liability limits provided in the policy.

"2. In this paragraph 'uninsured motor vehicle' also includes:

". . .

"b. An unidentified motor vehicle involved in a hit-and-run accident."

Hayne asserted that sec. 632.32(4)(a) 2.b. should be construed to mandate coverage for an accident involving an unidentified motor vehicle even though there is no "hit" or physical contact between the vehicles involved in the accident.

The trial court concluded that *Amidzich* remains the controlling interpretative decision of Wisconsin's uninsured motorist statute. The court held that sec. 632.32 (4)(a) 2.b., Stats., does not require coverage for an accident involving an unidentified motor vehicle where there was no physical contact between the vehicles. The court therefore granted Progressive's motion and dismissed Hayne's complaint. Hayne appealed, and we granted his petition to bypass.

It is clear that the express terms of Progressive's insurance policy requiring a striking between vehicles involved in a hit-and-run accident ordinarily would preclude Hayne's claim because no striking occurred in his accident. However, coverages omitted from an insurance contract may be compelled and enforced as part of that contract where the inclusion of such coverage is statutorily required. *Amidzich*, 44 Wis. 2d at 53. We must therefore determine whether the uninsured motorist coverage mandated by sec. 632.32(4)(a) 2.b., Stats., includes coverage for an accident involving an unidentified motor vehicle when there was no physical contact between the vehicles involved in the accident.

In construing a statute, first recourse must be to the statutory language itself. *State v. Derenne*, 102 Wis. 2d

38, 45, 306 N.W. 2d 12 (1981). Section 990.01(1), Stats., relating to general rules of statutory construction, provides that all nontechnical statutory words and phrases must be construed according to their common and approved usage. The common and approved usage of words in a statute can be established by reference to a recognized dictionary. *Kollasch v. Adamany,* 104 Wis. 2d 552, 563, 313 N.W.2d 47 (1981).

The statutory language at issue in this case is the term "hit-and-run" as used in sec. 632.32(4)(a) 2.b., Stats. The question is whether the term "hit-and-run" includes "miss-and-run" or whether it requires an actual physical striking.

Webster's Third New International Dictionary 1074 (1961) defines "hit-and-run" as "2a(1) of the driver of a vehicle: guilty of leaving the scene of an accident without stopping to render assistance or to comply with legal requirements (2): caused by, resulting from, or involving a hit-and-run driver . . . ." Webster's then refers to a "hit-and-run driver" in the definition of "hit-and-runner": "one that hits and runs away; esp: a hit-and-run driver." *Id.* "Hit" is defined as "to reach or or get at by *striking* with or as if with a sudden blow." (Emphasis added.) *Id.* The American Heritage Dictionary 625 (1979) defines "hit-and-run" as "designating or involving the driver of a motor vehicle who drives on after *striking* a pedestrian or another vehicle." (Emphasis added.) Funk and Wagnall's Standard College Dictionary 636 (1968) provides the following definition of "hit-and-run": "designating, characteristic of, or caused by the driver of a vehicle who illegally continues on his way after *hitting* a pedestrian or another vehicle." (Emphasis added.) "Hit" is defined as "to give a blow to; *strike* forcibly." (Emphasis added.) *Id.* at 636. These definitions clearly indicate that the plain meaning of "hit-and-run" consists of two elements: a "hit" or

striking, and a "run", or fleeing from the scene of an accident.

When statutory language is clear and unambiguous, we must arrive at the legislature's intention by according the language its ordinary and accepted meaning. *State v. Engler,* 80 Wis. 2d 402, 406, 259 N.W.2d 97 (1977). In addition, we will not resort to extrinsic aids, such as legislative history, to construe the statute when the statute is clear on its face. *See Aparacor Inc. v. DILHR,* 97 Wis. 2d 399, 403, 293 N.W.2d 545 (1980).

We conclude that the statutory language of sec. 632.-32(4)(a)2.b., Stats., is unambiguous. We therefore arrive at the legislature's intent by according the language its common and accepted meaning. *Engler,* 80 Wis. 2d at 406. As previously noted, the common and accepted meaning of the term "hit-and-run" includes an element of physical contact. Section 632.32(4)(a) 2.b. mandates coverage only for *"hit-and-run"* accidents involving an unidentified motor vehicle. The clear statutory language of sec. 632.32(4)(a) 2.b. reflects a legislative intent that the statute apply only to accidents in which there has been physical contact. Because there was no physical contact under the circumstances of this case, sec. 632.32(4)(a) 2.b. does not support Hayne's claim for coverage.

Hayne nevertheless argues that the term "hit-and-run" in sec. 632.32(4)(a) 2.b., Stats., is not synonymous with physical contact. He cites two dictionary definitions[3]

---

[3] Hayne cites to the Random House Dictionary 426 (Concise ed. 1980) which he claims defines hit-and-run as "guilty of leaving the scene of an accident caused by a vehicle driven by oneself." We note that the 1966 Unabridged Edition of the Random House Dictionary defines the term as: "1. hitting and running away, esp. from the scene of an automobile accident: a hit-and-run driver." (p. 674). Hayne also cites to Webster's New Collegiate Dictionary 392 (1958), which defines "hit-and-run" as: "that hits and runs away; orig. and esp. used of motor vehicle drivers who flee after being involved in an accident."

and a decision from another jurisdiction[4] to support his assertion that hit-and-run simply means an automobile involved in an accident, after which the driver flees the accident scene.

We find his argument unpersuasive. The dictionary definitions we previously cited uniformly indicate that "hit-and-run" includes two elements: a "hit" or striking, and a "run", or fleeing from the accident scene.

We also note that courts in other states have concluded that the term "hit-and-run" in their uninsured motorist statutes does not connote physical contact. This conclusion is based, in part, on other statutes imposing a duty on a driver involved in an accident to stop, provide certain information, and render aid. Although the latter statutes are commonly known as "hit-and-run" statutes, they have been interpreted to apply to accidents not involving physical contact. *See, e.g., Clark v. Regent Insurance Co.,* 270 N.W.2d 26, 30 (S.D. 1978). *Soulee v. Stuyvesant Insurance Co.,* 364 A.2d 883, 885 (N.H. 1976). Wisconsin's version of these statutes, however, is entitled "Duty upon *striking* person or attended or occupied vehicle." Section 346.67, Stats. (Emphasis added.)[5] Section 346.67(1)(a) provides, in part: ". . . he shall give his name, address and the registration number of the vehicle he is driving to the person *struck* . . ." The reference to "striking" in sec. 346.67 supports our conclusion that the plain meaning of "hit-and-run" in sec. 632.32(4)(a) 2.b. includes a physical contact element.

---

[4] *Hartford Accident & Indemnity Co. v. Novak,* 520 P.2d 1368 (Wash. 1974).

[5] Although the term "hit-and run" is not used in sec. 346.67, Stats., this court has previously described the offense resulting from a violation of that provision as a "hit-and-run offense." *State ex rel. McDonald v. Douglas County Circuit Court,* 100 Wis. 2d 569, 574, 302 N.W.2d 462 (1981).

Finally, statutes must be construed, if possible, so that no word or clause is rendered surplusage. *Donaldson v. State,* 93 Wis. 2d 306, 315, 286 N.W.2d 817 (1980). If the legislature had intended its mandated uninsured motorist coverage to apply to any accident involving an unidentified motorist, as Hayne asserts, that result could have been reached merely by deleting the term "hit-and-run" from the language in sec. 632.32(4)(a) 2.b., Stats., and having that provision read: "an unidentified motor vehicle involved in an accident." The legislature did not, however, omit the term "hit-and-run". Therefore, to define "hit-and-run" in sec. 632.32(4)(a) 2.b. to include the type of accident Hayne was involved in or any other accident involving an unidentified motor vehicle where there is no physical contact would be to render the term "hit-and-run" in the statute mere surplusage. That we cannot do.

Hayne also contends that contrary to the trial court's conclusion, our decision in *Amidzich* is inapplicable because of changes in the uninsured motorist statute that occurred after *Amidzich* was decided. Hayne argues that by these changes, the legislature deliberately intended to avoid the result reached in *Amidzich*.

Because we have concluded that sec. 632.32(4)(a) 2.b., Stats., is clear on its face, we need not resort to legislative history to arrive at the legislature's intent. We note, however, that the history and circumstances upon which Hayne relies actually support our conclusion that sec. 632.32(4)(a)2.b. does not require the type of coverage Hayne seeks.

In 1965, the Insurance Laws Revision Committee was created pursuant to chapter 406, Laws of 1965.[6] The legislature directed that the committee study the then

---

[6] The chairperson of the Insurance Laws Revision Committee was former acting Governor Martin Schreiber. Professor Spencer Kimball served as research director.

existing insurance laws and make recommendations for their systematic revision and codification. In accordance with this mandate, an advisory committee comprised primarily of insurance industry representatives provided expert assistance to the Insurance Laws Revision Committee for the project. At the Wisconsin Legislative Council's request, the committee recommended proposals that eventually culminated in enactment of sec. 204.30 (5), Stats., relating to uninsured motorist coverage. Section 204.30 (5) was subsequently renumbered to sec. 204.30 (5) (a) by chapter 598, Laws of 1965, which also created sec. 204.30 (5) (b). Sections 204.30 (5) (a) and (5) (b) (Supp. 1965), provided, in relevant part:

"204.30 **Accident insurance, highway traffic, policy provisions.**

"(5) UNINSURED MOTORISTS COVERAGE. (a) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death in the amount of $10,000 per person and $20,000 per accident under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. The named insured has the right to reject such coverage. . ."

"(b) For purposes of this coverage, 'uninsured motor vehicle' includes an insured motor vehicle if before or after the accident the liability insurer of the motor vehicle is declared insolvent by a court of competent jurisdiction. . ."

Sec. 204.30 (5) was in effect at the time we decided *Amidzich.*

*Amidzich* involved the same type of accident as this case. The insured's policy contained an uninsured motor vehicle clause, which extended coverage for damages resulting from a "hit-and-run" accident involving an unidentified vehicle. The policy defined a "hit-and-run" automobile as one ". . . which causes bodily injury to an insured arising out of physical contact of such automobile with the insured." The insured argued that the phrase "physical contact" should be construed to provide coverage to an insured who was forced off the road by an unidentified vehicle with no physical contact between the vehicles. We held, however, that the plain meaning of the phrase "physical contact" is apparent and requires a hit or touching between the vehicles. We discussed the term "hit-and-run", which is at issue in this case, and stated: "the very term, 'hit-and-run', contained in the policy itself supports the plain meaning that we attribute to the term, 'physical contact.' " 44 Wis. 2d at 51. We also found no indication that the coverage the insured sought was mandated by sec. 204.30 (5), Stats., and noted: "Persuasive arguments could be made that statutory requirements to afford coverage to the plaintiff should be provided. The present statute [sec. 204.30 (5)], however, does not require such coverage . . ." *Id.* at 54.

Hayne contends that the legislature had the preceding statement in mind when it enacted sec. 632.32 (4) (a) 2.b., Stats., to include within the definition of uninsured motor vehicle an unidentified vehicle involved in a hit-and-run accident. He argues that had the legislature wanted to retain a physical contact requirement for "hit-and-run" accidents, it would have expressly stated that coverage under sec. 632.32 (4) (a) 2.b. is limited to accidents involving physical contact. That is not persua-

sive. If, in fact, the legislature had that statement from *Amidzich* in mind when it enacted sec. 632.32(4)(a) 2.b., then it also was aware of the discussion in *Amidzich* of the term "hit-and-run". Had the legislature intended Hayne's assertion, the clearest way to effectuate that intent was simply to not include the term "hit-and-run", thereby mandating coverage for "miss-and-run accidents" as well. The legislature did not do that, but instead deliberately included in sec. 632.32(4)(a) 2.b. the term "hit-and-run". The unambiguous meaning of that term includes a physical contact element.

We also find nothing in the events surrounding changes in the uninsured motorist statute to support Hayne's argument that the legislature intended to avoid the result reached in *Amidzich*. In fact, the legislative history supports the opposite conclusion.

After the decision in *Amidzich,* the Insurance Laws Revision Committee continued to study and recommend revisions to Wisconsin's insurance laws. In 1975, Sec. 204.30(5), Stats., was repealed by ch. 375, Laws of 1975, which also created subchapter IV of ch. 632. Section 632.32 (1975) provided, in pertinent part:

"SUBCHAPTER IV
"ANIMAL, AUTOMOBILE AND MOTOR VEHICLE INSURANCE
"**632.32 Required provisions for animal and automobile liability insurance.**
". . .
"(3) UNINSURED MOTORIST COVERAGE. (a) Required coverage. Every policy of insurance delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state and insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall provide therein or supplemental thereto in limits for bodily injury or death in the amount

of at least $15,000 per person and $30,000 per accident under provisions approved by the commissioner, for the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom . . .

"(b) *Coverage in event of insolvency of insurer.* For purposes of this coverage, 'uninsured motor vehicle' includes an insured motor vehicle if before or after the accident the liability insurer of the motor vehicle is declared insolvent by a court of competent jurisdiction. . ."

On July 25, 1977, the Insurance Laws Revision Committee met to consider further statutory revisions, including changes in the uninsured motorist provision. At that meeting, which was tape recorded, the committee discussed including "hit-and-run" accidents within the uninsured motor vehicle coverage that would be statutorily required. The tape reveals that one of the committee members suggested it was unnecessary to include "hit-and-run" accidents within the statutorily mandated uninsured motor vehicle coverage because existing, approved insurance policies explicitly included coverage for "hit-and-run" accidents. Another member indicated that a category for "hit-and-run" accidents should be added to the statutory definition of uninsured motor vehicle because if it was not included, the insurance commissioner could not require such coverage. The committee then agreed to recommend inclusion of "hit-and-run" accidents as a separate category of statutorily required uninsured motorist coverage.[7]

---

[7] Wisconsin Legislative Council tape recording of July 25, 1977, meeting of the Insurance Laws Revision Committee. *See, also,* Wisconsin Legislative Council, Summary of Proceedings, Insurance Laws Revision Committee, July 25, 1977, in *Summaries of Committee Meetings* Vol. III (1975–77).

After this meeting, the Wisconsin Legislative Council submitted a report to the 1977 legislature concerning Senate Bill 636, which incorporated the committee's recommendations concerning changes in statutorily required uninsured motorist coverage. This report provided, in relevant part:

"*Section 632.32* contains several provisions. Under former law, s. 632.32 included the provisions that must be inserted in the ordinary automobile policy. Former s. 632.34, on the other hand, dealt with provisions required by the safety financial responsibility law (Ch. 344 of the statutes). The two sections were overlapping and in some instances inconsistent or ambiguous. In the provisions recommended by the Insurance Laws Revision Committee, the sections are combined into a new s. 632.-32. In addition, the new section makes the following substantive changes:

". . .

"b. The provisions relating to uninsured motorists [s. 632.32(4)] are amended to specifically include hit-and-run drivers. As a matter of practice, most automobile liability clauses now include these drivers anyway."

Wisconsin Legislative Council, Report No. 31 to the 1977 legislature relating to insurance laws revision (January 30, 1978), cited in Wisconsin Legislative Council, *Reports to 1977 Legislature*, Vol. 2. Senate Bill 636 was introduced by the Legislative Council, but it failed to pass. In 1979, the legislature considered Senate Bill 146, which specifically included an unidentified motor involved in a "hit-and-run" accident within the definition of uninsured motor vehicle. The introductory note to Senate Bill 146 indicates that the bill was a combination of bills that the Insurance Laws Revision Committee approved at its July 25, 1977, meeting for recommendation to the Legislative Council. The 1979 Legislative Council Report to the legislature on Senate Bill 146 discussed proposed changes in sec. 632.32, Stats., and re-

peated the above quoted comments on sec. 632.32, and specifically sec. 632.32(4), contained in the Legislative Council's Report to the 1977 legislature on Senate Bill 636.

Section 632.32, Stats., was subsequently repealed by ch. 102, sec. 171, Laws of 1979, and recreated to read, in part:

"SUBCHAPTER IV
"AUTOMOBILE AND MOTOR VEHICLE INSURANCE
"632.32 Provisions of motor vehicle insurance policies.
" . . .
"(4) REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioners;

"(a) Uninsured motorist. 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $15,000 per person and $30,000 per accident. The insurer may increase the coverage limits provided under this paragraph up to the bodily injury liability limits provided in the policy.

"2. In this paragraph 'uninsured motor vehicle' also includes:

"a. An insured motor vehicle if before or after the accident the liability insurer of the motor vehicle is declared insolvent by a court of competent jurisdiction.

"b. An unidentified motor vehicle involved in a hit-and-run accident."[8]

---

[8] The legislature also adopted the following Legislative Council Note in ch. 102, Laws of 1979:

"Sub (4) [of sec. 632.32] continues former sub (3) and former s. 632.34(5) with major editorial changes but without intending

The remarks of Insurance Laws Revision Committee members at the July 25, 1977, meeting, and the January 30, 1978, Legislative Council report to the legislature indicate that those responsible for the revision adding "hit-and run" accidents as a category to be included in required uninsured motorist coverage were simply incorporating a category of coverage into the statute that most standard insurance policies already contained.

At the time the Insurance Laws Revision Committee discussed, and the legislature considered, defining uninsured motor vehicle to include an unidentified vehicle involved in a "hit-and-run" accident, the standard automobile insurance policy defined "hit-and-run" as requiring physical contact. In 1956, a committee comprised of representatives from the National Bureau of Casualty Underwriters and Mutual Insurance Rating Bureau first drafted a Standard Coverage Part for uninsured motorist coverage provisions in insurance policies. The 1966 Standard Form issued by the committee specified that the term "uninsured highway vehicle" encompasses a "hit-and-run vehicle."[9] The form then defined a "hit-

change of meaning except to add an unidentified hit-and-run vehicle as an uninsured vehicle. A precise definition of hit-and-run is not necessary for in the rare case where a question arises, the court can draw the line."

The dissent implicitly argues, as justification for its position, that "miss-and-run" cases are the kind of "rare" cases referred to in the above note. Given the voluminous number of reported cases involving "miss-and-run" accidents cited by the dissent, it is difficult to see how "miss-and-run" cases can be considered rare. On page 97 of the dissent, there are references to examples of accidents involving physical contact that the dissent contends do not fall within the majority's definition of "hit-and-run". Those examples are rare cases indeed, and would seem to be precisely the type of "rare" cases that the Legislative Council Note refers to.

[9] Widiss, A., *A Guide to Uninsured Motorist Coverage* 295 (1969). *See also*, Widiss, A., *A Guide To Uninsured Motorist Coverage* sec. 2.41 at 139 (Supp. 1981).

and-run vehicle" as "a highway vehicle which causes bodily injury to an insured arising out of physical contact of such vehicle with the insured . . ."[10] It is reasonable to assume that if the legislature was aware of the standard policy provision defining uninsured motor vehicle to include one involved in a "hit-and-run" accident, it was also aware of the standard policy provision defining "hit-and-run" to include a physical contact requirement.

We also note that the legislature is presumed to enact statutory provisions with full knowledge of existing laws, including decisions of this court interpreting relevant statutes. *Glinski v. Sheldon,* 88 Wis. 2d 509, 519–20, 276 N.W.2d 815 (1979). When the legislature amended sec. 632.32, Stats., to include "hit-and-run" accidents within the general category of required uninsured motorist coverage, *Amidzich* had been decided. The legislature presumably was aware of the discussion in *Amidzich* concerning the literal meaning of "hit-and-run", and certain policy arguments favoring inclusion within the statutory uninsured motorists provision of coverage for "miss-and-run" accidents. The Insurance Law Revision Committee meeting notes and the Legislative Council's January 30, 1978, report to the legislature also reflect knowledge of standard insurance policy provisions relating to uninsured motorist coverage. Given this background, the legislature was confronted with two distinct policy choices: One, it could define uninsured motor vehicle to include an unidentified motor vehicle involved in an accident, regardless of whether physical contact occurred; or two, it could define uninsured motor vehicle to include an unidentified motor vehicle involved in a "hit-and-run" accident. The legislature chose the second alternative.

As we recognized in *Amidzich,* there are persuasive

---

[10] Widiss, A., *A Guide to Uninsured Motorist Coverage,* 294 (1969).

policy arguments that the type of coverage Hayne seeks should be statutorily required. For us to conclude, however, that such coverage is presently mandated by sec. 632.32(4)(a) 2.b., Stats., would require that we ignore the clear language of the statute and substitute our judgment for that of the legislature.[11]

*By the Court.*—The judgment of the circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* Sec. 632.32(4)(a), Stats. 1981–82, requires an automobile liability insurance policy to protect the insured against loss resulting from injury by owners or operators of uninsured motor vehicles who are liable to the insured under usual tort laws for injury. This case raises a single question of law: By limiting the insured's coverage in a hit-and-run accident to an unidentified motor vehicle which has physical contact with the insured or the insured's vehicle, does the insurance policy conflict with sec. 632.32(4)(a), which does not refer to physical contact, thereby rendering the physical contact requirement in the policy void?

Sec. 632.32(4)(a), Stats. 1981–82, provides as follows:

"(4) REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES. Every policy of insurance subject to this section that insures with respect to any motor ve-

[11] Many of the policy arguments favoring uninsured motorist coverage for "miss-and-run" accidents involving unidentified motor vehicles are addressed in the dissent. We cannot, however, change the wording of a statute by liberal construction to mean something that the legislature did not intend, or that the plain language of the statute will not support. *See Lukaszewicz v. Concrete Research, Inc.,* 43 Wis. 2d 335, 342, 168 N.W.2d 581 (1969). The legislature can, if it so desires, amend the uninsured motorist statute to reflect those policy arguments. However, for the dissent to say that a legislative change would "disavow the interpretation set forth in the majority opinion" is no more an accurate reflection of the dynamics of the legislative process than if the majority

hicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

"(a) *Uninsured motorist.* 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident. The insurer may increase the coverage limits provided under this paragraph up to the bodily injury liability limits provided in the policy.

"2. In this paragraph "uninsured motor vehicle" also includes:

"a. An insured motor vehicle if before or after the accident the liability insurer of the motor vehicle is declared insolvent by a court of competent jurisdiction.

"b. An unidentified motor vehicle involved in a hit-and-run accident.

"3. Insurers making payment under the uninsured motorists' coverage shall, to the extent of the payment, be subrogated to the rights of their insureds."

I conclude that the physical contact requirement of the insurance policy conflicts with the uninsured motor vehicle statute and is unenforceable. I base this conclusion on two grounds:

First, the term "hit-and-run" as used in sec. 632.32 (4) (a) 2.b. includes the "miss-and-flee" vehicle presented in this case. The majority's reading the term "hit-and-run" to mean only "strike-and-flee" lacks support in the legislative history of the statute and contravenes the legislative purpose.

Second, even if "hit-and-run" in sec. 632.32 (4) (a) 2.b. means only "strike-and-flee," a "miss-and-flee" vehicle is included within the phrase "uninsured motor

said that the legislature's failure to do so would be a disavowal of the dissent. The majority does not assert that.

vehicle" under sec. 632.32(4)(a)1. The majority mistakenly assumes that unless the uninsured motor vehicle fits within the "hit-and-run" provision of sec. 632.32 (4)(a) 2.b., the insured does not have the benefit of the uninsured motorist coverage. [1]

## I.

The majority's holding that "hit-and-run" is an "unambiguous" term requiring physical contact is not supported by dictionary definitions or judicial interpretations of the statutory term.

Dictionary definitions of "hit-and-run" are not uniform. While some dictionaries refer to a striking and fleeing, others refer merely to causing an accident and fleeing.[2] Several courts have concluded that "hit-and-

---

[1] This premise becomes clear when one examines the majority's statement of the issue: "The sole issue on appeal is whether sec. 632.32(4)(a)2.b., Stats., requires uninsured motorist coverage for an accident involving an insured's vehicle and an unidentified vehicle when there is no physical contact between the two vehicles." *Supra* p. 68. See also *supra* p. 72.

[2] Dictionaries that refer to "hit-and-run" only as an accident or fleeing include: *Random House Dictionary* 426 (Concise ed. 1980) —"guilty of leaving the scene of an accident caused by a vehicle driven by oneself"; Vol. II Supplement to the *Oxford English Dictionary* 109 (1976)—"the action of the driver of a motor vehicle who fails to stop after an accident for which he is responsible"; *A Dictionary of Americanisms* (ed. M. Mathews 1951), p. 810—"of or pertaining to accidents of automobiles, trucks, etc., in which the driver seeks to avoid detection by not stopping."

Dictionaries that define "hit-and-run" to require physical contact include: *Random House Dictionary of the English Language* 674 (1966)—"hitting and running away, esp. from the scene of an automobile accident"; *American Heritage Dictionary of the English Language* 625 (1969)—"[d]esignating or involving the driver of a motor vehicle who drives on after striking a pedestrian or another vehicle"; *Black's Law Dictionary* 657 (5th ed. 1979)— "collision generally between motor vehicle and pedestrian or with another vehicle in which the operator of a vehicle leaves the

run" in ordinary usage does not connote physical contact. *See Surrey v. Lumbermens Mut. Cas. Co.*, 1981 Mass. Adv. Sh. 1719, ——, 424 N.E.2d 234, 238 (1981) ; *Halseth v. State Farm Mut. Auto Ins. Co.*, 268 N.W.2d 730, 733 (Minn. 1978) ; *Hartford Accident and Indemnity Co. v. Novak*, 83 Wash. 2d 576, 520 P.2d 1368, 1374 (1974). The majority's reliance on *Amidzich v. Charter Oak Fire Ins. Co.*, 44 Wis. 2d 45, 170 N.W.2d 813 (1969), is misplaced. The *Amidzich* court was not interpreting the term "hit-and-run" but was interpreting an insurance policy that expressly defined "hit-and-run" as requiring physical contact. *Amidzich* is therefore not relevant to define the statutory phrase.

It will not do, as the majority suggests, to bootstrap the definition of "hit" into the meaning of the term "hit-and-run." It makes no more sense to isolate and define the word "hit" than it does to isolate and define the word "run," a verb not normally associated with movement of an automobile. The term "hit-and-run" is a colloquialism, and not three distinct words.

As to judicial interpretations of the statutory term "hit-and-run" in uninsured motorist statutes,[3] courts across the country have divided.

---

scene without identifying himself. Such an act is a crime."

*Webster's New International Dictionary* 1183 (2d ed. unabridged, 1935) seems to define "hit-and-run" both ways: "[t]hat hits and runs away; orig. used of motor-vehicle drivers who flee after causing an accident."

[3] Apparently all 50 states have uninsured motorist statutes. *Clark v. Regent Ins. Co.*, 270 N.W.2d 26, 27 (S.D. 1978). The statutes can be categorized generally into three types: (1) statutes that refer to uninsured motor vehicles but not to hit-and-run vehicles or physical contact; (2) statutes that refer to uninsured and hit-and-run vehicles but not to physical contact; (3) statutes that require physical contact within the definition of uninsured and hit-and-run vehicles. *Surrey v. Lumbermens Mut. Cas. Co.*, 1981 Mass. Adv. Sh. 1719, ——, 424 N.E.2d 234, 236-37 (1981) ; 2 Schermer, *Automobile Liability Insurance* ch. 30 (rev. 1983).

Those decisions which interpret the statutory phrases "uninsured motor vehicle" and "hit-and-run" to include "miss-and-flee" vehicles are of more recent origin and have now become the majority rule.[4]

After reading the dictionaries, the numerous cases from other jurisdictions, and the majority opinion, I conclude that the term "hit-and-run" in both common usage and in legal usage refers to a range of incidents. Since the term is ambiguous, that is, it is reasonably

---

The first two categories contain two lines of authority. One line of cases interprets "hit-and-run" or "uninsured motor vehicle" to require physical contact. *See, e.g., Prosk v. Allstate Ins. Co.*, 82 Ill. App. 2d 457, 226 N.E.2d 498 (1967); *Grace v. State Farm Mut. Auto Ins. Co.*, 197 Neb. 118, 246 N.W.2d 874 (1976); *Hendricks v. U.S. Fidelity & Guaranty Co.*, 5 N.C. App. 181, 167 S.E. 2d 876 (1969); *Travelers Indemnity Co. v. Reddick*, 37 Ohio 2d 119, 308 N.E.2d 454 (1974).

The other line does not interpret "hit-and-run" or "uninsured motor vehicle" to require physical contact. *See, e.g., Abramowicz v. State Farm Mut. Auto. Ins. Co.*, 369 A.2d 691 (1977) (Del. Super. Ct. 1977), affd 386 A.2d 670 (Del. 1978); *Simpson v. Farmers Ins. Co., Inc.*, 225 Kan. 508, 592 P.2d 445 (1979); *Surrey v. Lumbermens Mut. Cas. Co.*, 1981 Mass. Adv. Sh. 1719, 424 N.E.2d 234 (1981); *Soule v. Stuyvesant Ins. Co.*, 116 N.H. 595, 364 A.2d 883 (1976); *Biggs v. State Farm Mut. Auto. Ins. Co.*, 569 P.2d 430 (Okla. 1977); *Clark v. Regent Ins. Co.*, 270 N.W.2d 26 (S.D. 1978); *Hartford Accident and Indemnity Co. v. Novak*, 83 Wash. 2d 576, 520 P.2d 1368 (1974).

For a collection of cases, *see* Annot., *Uninsured Motorist Endorsement: Validity and Construction of Requirement That There Be a "Physical Contact" with Unidentified or Hit-and-Run Vehicle*, 25 ALR3d 1299 (1969).

[4] *See Abramowicz v. State Farm Mut. Auto. Ins. Co.*, 369 A.2d 691, 692 (Del. Super. Ct. 1977), affd 386 A.2d 670 (Del. 1978); *Simpson v. Farmers Ins. Co., Inc.*, 225 Kan. 508, 592 P.2d 445, 449 (1979) (majority rule is that the physical contact requirement is contrary to public and legislative policy in uninsured or unknown motorist statutes); *Surrey v. Lumbermens Mut. Cas. Co.*, 1981 Mass. Adv. Sh. 1719, ——, 424 N.E.2d, 234, 237 (1981) (17 jurisdictions find physical contact requirement in insurance policies unenforceable under "hit-and-run" and unknown or uninsured motorist provisions; 14 courts find the requirement to be valid).

susceptible to more than one construction, I turn to the legislative history of sec. 632.32(4)(a) to determine which incidents the legislature intended to encompass with the term "hit-and-run."

The legislative history shows that the Wisconsin Insurance Laws Revision Committee wanted to be sure that the unidentified "hit-and-run" motor vehicle was included as an uninsured motor vehicle, but the Committee never discussed what it meant by "hit-and-run." It is apparent from the Drafting File of the Wisconsin Insurance Laws Revision Committee, however, that the drafting staff knew that "hit-and-run" was an ambiguous term. *See* Staff Attorney Barbara Heaney's Drafting File on sec. 632.32, Wisconsin Legislative Reference Bureau, State Capitol, Madison, Wisconsin. The drafters knew that the meaning of "hit-and-run" had been litigated in other states, that courts had divided on the question of whether a miss-and-flee vehicle is an uninsured motor vehicle or a hit-and-run vehicle, and that some uninsured motorist statutes expressly defined "hit-and-run" as requiring a striking. Indeed copies of the Iowa and New York statutes which define "hit-and-run" as requiring physical contact are in the Drafting File. The drafters were well aware of the possibility of miss-and-flee vehicles. Had they wanted to make clear that hit-and-run vehicles are required to make physical contact, they would have said so. They did not.

Indeed the legislature itself recognized the ambiguity of the term "hit-and-run" by expressly adopting the following Legislative Council Note in ch. 102, Laws of 1979:

"Sub (4) [of sec. 632.32] continues former sub (3) and former s. 632.34(5) with major editorial changes but without intending change of meaning except to add an unidentified hit-and-run vehicle as an uninsured vehicle. *A precise definition of hit-and-run is not neces-*

*sary for in the rare case where a question arises, the court can draw the line."* (Emphasis added.)

A Legislative Council Note in an earlier version of sec. 632.32, also adopted by the legislature, states that the legislature did not attempt to resolve all ambiguities in this area of the law.[5]

The drafters, the committee, and then the legislature failed to define the term "hit-and-run," apparently intentionally leaving it to a case-by-case construction.

The majority argues that since the standard automobile insurance contract contains a "hit-and-run" provision requiring physical contact, the drafters, the committee, and hence the legislature intended to incorporate the standard automobile insurance contract clause requiring physical contact into the statute. This argument has no basis in fact. Nothing in the files or in the tape-recorded proceedings of the committee meeting (to which the majority refers) shows that the committee or the legislature knew that the standard contract or that all or several Wisconsin auto insurance policies defined "hit-and-run" as requiring physical contact.

Professor Widiss, upon whom the majority relies for its information about the standard contract, explains that in most state statutes the terms "hit-and-run" and "uninsured motor vehicle" are not defined. He concludes that he could not determine from the history of uninsured motorist statutes in this country whether the legislatures' failure to define "uninsured motor vehicle" or "hit-and-run" stems from effective lobbying by the insurance industry or from the legislatures' deliberate decisions to incorporate into their statutes only that limited coverage which the industry was then writing in

---

[5] See ch. 375, Subch. VI, Introductory Note, Laws of 1975.

its policies. Widiss, *A Guide to Uninsured Motorist Coverage,* sec. 1.12, p. 16 (1969).[6]

Although a statutory term is ambiguous and its meaning remains uncertain after a review of the legislative history, the court must nevertheless determine what the legislature intended by the term. *See, e.g., Dixon v. Dixon,* 107 Wis. 2d 492, 499, 500, 319 N.W.2d 846 (1982). The key to the legislative intent as to "hit-and-run" may be found in considering the problems that the

---

[6] The majority advances other arguments which attempt to demonstrate that the legislature intended to exclude miss-and-flee vehicles from the scope of the hit-and-run provision of sec. 632.32 (4) (a) 2.b. Alone or together they are unpersuasive. The majority reasons that because sec. 346.67, Stats. 1981–82, the criminal offence of failing to stop upon striking a person or occupied vehicle requires a striking, a striking is needed in sec. 632.32 (4) (a) 2.b. These statutes are not in pari materia. While other courts have looked to the criminal statutes for guidance in interpreting the insurance law, the use of criminal statutes is not significant in interpreting the insurance laws.

The majority also argues that including "miss-and-flee" within sec. 632.32 (4) (a) 2.b. renders the words "hit-and-run" surplusage. *Supra* p. 76. The majority errs in its narrow interpretation of sec. 632.32 (4) (a) 2.b. because it erroneously views sec. 632.32 (4) (a) 2.b. as setting forth an all-inclusive definition of an uninsured motor vehicle.

Finally, the majority assumes that the committee or legislature considered and adopted the interpretation of hit-and-run set forth by this court in *Amidzich v. Charter Oak Fire Ins. Co.,* 44 Wis. 2d 45, 170 N.W.2d 813 (1969). The majority's use of *Amidzich* is unconvincing for several reasons. First, there is no reference to this case in the Drafting File or in the Laws Revision Committee's minutes or taped proceedings. The court in *Amidzich* interpreted the term "hit-and-run" which was explicitly defined in the insurance policy to require physical contact. The *Amidzich* court interpreted the uninsured motorist statute as not requiring coverage of any unidentified vehicles—whether or not there was physical contact—since the insured could not prove that the unidentified vehicle was uninsured. No reliance should, however, be placed on this aspect of *Amidzich* since the uninsured motorist statute was amended in 1979 to require coverage in accidents with unidentified hit-and-run vehicles.

legislature addressed in the uninsured motorist statute and the goals the legislature sought to achieve. This court's "cardinal rule in interpreting statutes is that the purpose of the whole act is to be sought and is favored over a construction that will defeat the manifest object of the act." *Student Assoc. of UW–M v. Baum,* 74 Wis. 2d 283, 294–95, 246 N.W.2d 622 (1976).

The legislature has not articulated its purpose in sec. 632.32(4)(a). Courts and commentators have concluded that the purpose of uninsured motorist coverage is to minimize financial loss for insured victims of automobile accidents caused by the negligence of unknown or uninsured motorists who cannot make the injured party whole. This court has said that "the purpose of uninsured motorists coverage is to compensate an injured who is a victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured." *Vidmar v. American Family Mut. Ins. Co.,* 104 Wis. 2d 360, 370, 312 N.W.2d 129 (1981).

If I were to consider only the statutory purpose of sec. 632.32(4)(a), I would have to conclude that physical contact is an irrelevant and insignificant factor upon which to deny uninsured motorist coverage and that the insurance policy requirement of physical contact is void. In tort law it is not essential that contact be had in order for liability to arise. There is, however, need for further inquiry. We must ask whether there is a countervailing public purpose which "trumps" the purpose of sec. 632.32 (4)(a) and justifies the insurance policy requiring physical contact. In other words, looking only at the purpose of sec. 632.32(4)(a), I would conclude that "hit-and-run" as used in sec. 632.32(4)(a)2.b. should not be limited to instances of physical contact. If, however, the physical contact requirement serves an objective compatible with or overriding the purpose of the uninsured motorist statute, then the requirement is valid.

The only justification I could find for the physical contact requirement is prevention of fraudulent claims.[7] The fear is that claimants will allege they were forced off the road by another vehicle (the phantom car) when in fact they lost control of their car through their own negligence. While the need to prevent fraudulent claims is of great concern and is compatible with the purposes of the uninsured motorist statute, the question is whether the fear of fraudulent claims justifies reading the uninsured motorist statute to exclude the "miss-and-flee" claim presented by this case.

I am unpersuaded by the fraud argument. Because the genuineness of a claim can be tested in our adversary system, the fear of fraudulent claims cannot justify depriving a claimant of a right to seek redress in court. Whether the accident occurred as the claimant says is a question of fact; the burden of proof is on the claimant. If the claimant can sustain the burden of proof, the claimant should be entitled to recover regardless of physical contact. In the more than 15 states which do not require physical contact, no fleets of phantom cars cruise the roads causing great numbers of fraudulent claims. *See Clark v. Regent Ins. Co.,* 270 N.W.2d 26, 30 (S.D. 1978).

---

[7] The following cases found the fraud argument unpersuasive: *Montoya v. Dairyland Insurance Company,* 394 F. Supp. 1337 (D. N.M. 1975); *Farmers Insurance Exchange v. McDermott,* 34 Colo. App. 305, 527 P.2d 918 (1974); *Abramowicz v. State Farm Mut. Auto. Ins. Co.,* 369 A.2d 691, 693 (Del. Super. Ct. 1977), affd 386 A.2d 670 (Del. 1978); *Brown v. Progressive Mutual Insurance Company,* 249 So. 2d 429, 430 (Fla. 1971); *DeMello v. First Insurance Company of Hawaii, Ltd.,* 55 Hawaii 519, 523 P.2d 304, 308 (1974); *Soule v. Stuyvesant Ins. Co.,* 116 N.H. 595, 364 A.2d 883 (1976); *Clark v. Regent Ins. Co.,* 270 N.W.2d 26 (S.D. 1978); *Hartford Accident and Indemnity Co. v. Novak,* 83 Wash. 2d 576, 520 P.2d 1368 (1974).

The following cases found the fraud argument persuasive: *Inter-Ins. Exch. of Auto. Club of So. Calif. v. Lopez,* 238 Cal. App. 2d 441, 446, 47 Cal. Rptr. 834 (1965); *Ferega v. State Farm Mutual Auto. Ins. Co.,* 58 Ill. 2d 109, 317 N.E.2d 550, 552 (1974).

The claimant's injury, which the legislature intended to alleviate, occurs whether or not there is physical contact with the anonymous culprit. It does not make sense to me to hold that recovery is possible if there is a little dent in the claimant's car and no witness to the accident, but that recovery is denied if there is no physical contact and there are several disinterested witnesses. We must remember that the physical contact requirement would disallow coverage in the miss-and-flee vehicle case whether or not there were eyewitnesses to the accident. *See Brown v. Progressive Mutual Ins. Co.*, 249 So. 2d 429, 430 (Fla. 1971).

The courts' dissatisfaction with the injustices created by the physical contact requirement is seen in various courts' creativity in finding satisfaction of the physical contact requirement in order not to dismiss valid claims. Thus the requirement of physical contact of the uninsured motorist has been satisfied by a rock or a third car hitting the insured. *See DeMello v. First Insurance Company of Hawaii, Ltd.*, 55 Hawaii 519, 523 P.2d 304, 309 (1974).

Several commentators[8] and many courts[9] have concluded, as I have, that it is inconsistent with the remedial purpose of the uninsured motorist statute to permit the insurance company to evade coverage by using the fraud argument and erecting an arbitrary distinction between accidents with physical contact and those without.[10]

---

[8] *See* Appleman, *Insurance Law and Practice* secs. 5094, 5095, at 405, 414 (1981); Widiss, *A Guide to Uninsured Motorist Coverage*, sec. 2.41 (1969) (1981 Supp.); Collins, *The Uninsured Motorist Statute and the Phantom Vehicle: A View from the Southwest*, 43 Ins. Counsel J. 358, 360, 367–69 (1976). Compare Case Note, *Insurance, Automobile—Nebraska Supreme Court Upholds the Physical Contact Requirement for Phantom Vehicle Statutes Under Uninsured Motorist Coverage*, 11 Creighton L. Rev. 222 (1977).

[9] See cases cited in note 7 *supra*.

[10] *State Farm Fire and Casualty Co. v. Lambert*, 285 So. 2d 917 (Ala. 1973); *Halseth v. State Farm Mut. Auto Ins. Co.*, 268 N.W.2d 730 (Minn. 1978).

## II.

The majority apparently assumes, without discussion, that because the physical contact requirement is not met, the "miss-and-flee" vehicle is not an uninsured motor vehicle. I submit that even if the hit-and-run term in the statute requires physical contact, a miss-and-flee vehicle may still fall within the statutory phrase "uninsured motor vehicle," a phrase which is not defined in sec. 632.32 (4) (a) 1. "Uninsured motor vehicle" refers broadly to any vehicle to which no insurance policy applies at the time of the accident.

The legislature did not say uninsured motor vehicle *"means"* only a hit-and-run vehicle.[11] Rather, the legislature said that uninsured motor vehicle *"also includes"* "an unidentified motor vehicle involved in a hit-and-run accident." Sec. 632.32 (4) (a) 2.b. The word "includes" suggests that all meanings of the phrase "uninsured motor vehicle" have not been enumerated.[12] Indeed the legislature expressly stated in sec. 600.02 (1) that the word "includes" as used in the insurance code, unless the context indicates otherwise, refers to a partial enumeration of a larger category. Sec. 600.02 (1) provides that " 'includes' means 'including but not limited to.' "[13]

---

[11] The word "means" "excludes any meaning that is not stated." *Wis. Bankers Ass'n v. Mut. Savings & Loan,* 96 Wis. 2d 438, 446, 291 N.W.2d 869 (1980).

[12] In *Milwaukee Gas Light. Co. v. Dept. of Taxation,* 23 Wis. 2d 195, 203, 204, 127 N.W.2d 64 (1964), this court interpreted the word "including" to mean "classifying that which follows as being a component part of the whole." While noting that on occasion "including" had been read to mean "the only thing included," this court stated that to interpret the word "including" "as being a word of limitation or restriction would be to accord it the exceptional rather than the commonly accepted meaning." *See also Schlukebier v. Arlington Mut. Fire Ins. Co.,* 8 Wis. 2d 480, 484, 99 N.W.2d 705 (1959).

[13] It is clear that the use of the word "includes" in sec. 632.32 (4) (a) 2, rather than the word "means," was purposeful. Sec.

The use of the word "includes" in sec. 632.32(4)(a)2. was specifically brought to the attention of the Wisconsin Insurance Laws Revision Committee. On July 25, 1977, the committee discussed adopting revisions to the uninsured motorist statute. One member expressed a concern that in the draft before the committee the words "uninsured motor vehicle" could be construed as applying only to insolvent insurance companies and hit-and-run drivers, and not to other drivers who were without insurance. Dean Spencer Kimball, the research director for the committee, pointed out that the word "includes" in the statute and insurance code is defined as "includes but is not limited to." Wisconsin Legislative Council tape recording of July 25, 1977, Meeting of the Insurance Laws Revision Committee; Wisconsin Legislative Council, Summary of Proceedings, Insurance Laws Revision Committee, July 25, 1977, pp. 9–10. The legislature obviously did not intend the "hit-and-run" clause in sec. 632.32(4)(a)2.b. to describe all types of vehicles which may be within the broad phrase "uninsured motor vehicle" in sec. 632.32(4)(a)1.

Several examples come to mind which do not fall within the majority's definition of "hit-and-run" and yet should be included within uninsured motorist coverage. Suppose, for example, an accident is caused by a "strike-and-stop" vehicle: A vehicle strikes the insured; the operator stops, renders aid, waits for the ambulance, but is unidentified or gives a fictitious name. Or a vehicle strikes the insured; the operator stops, renders aid, takes the insured to the hospital, and leaves his or her name and address with the hospital; the name and address of the operator are later lost. The majority tells us that an unidentified hit-and-run vehicle is not synonymous with an unidentified motor vehicle causing an accident;

632.32(2)(a), (b) and (c) sets forth definitions which use either "includes" or "means."

the majority limits sec. 632.32(4)(a)2.b. to an unidentified "strike-and-flee" vehicle. Under the majority's reasoning the insured could be precluded from recovering under the insurance policy if there is an unidentified strike-and-stop vehicle since such a vehicle does not literally fall within the majority's "strike-and-flee" definition of "hit-and-run." We know this result cannot be right. Even if the "strike-and-stop" vehicle is not a "hit-and-run" vehicle under sec. 632.32(4)(a)2.b., obviously the strike-and-stop vehicle should be included within the statutory term "uninsured motor vehicle." The legislature must have intended to treat claimants the same whether they were injured by an unidentified driver who strikes and flees or by an unidentified driver who strikes and stops and renders assistance.

Even though sec. 632.32(4)(a)2.b. does not enumerate all possible examples of an uninsured motor vehicle, the question remains whether the legislature intended to require a policy to provide coverage against an unidentified "miss-and-flee" vehicle.

The unidentified "miss-and-flee" vehicle has two attributes: it is unidentified and it has made no physical contact with the insured. That the vehicle or its operator is unidentified is not, in and of itself, a significant factor in determining uninsured motorist coverage. In 1969 this court concluded that the uninsured motorist statute did not require an insurance policy to cover an accident caused by an unidentified motor vehicle. The court reasoned that the statute required the insured to prove that the vehicle was uninsured and if the vehicle was unidentified the insured could not carry the burden. *See Amidzich v. Charter Oak Fire Ins. Co.*, 44 Wis. 2d 45, 170 N.W.2d 813 (1969). Thus in *Amidzich* the court held that an insurance policy that provided coverage for a hit-and-run vehicle that had physical contact with the insured exceeded the coverage that was required by the

uninsured motorist statute. After *Amidzich* the legislature included an unidentified vehicle in a hit-and-run accident within the term "uninsured motor vehicle," thereby stating in effect that an unidentified vehicle is assumed to be uninsured. With the 1979 statutory amendment, the *Amidzich* decision is outdated and irrelevant.

Physical contact with the insured is not, in and of itself, a significant factor in determining uninsured motorist coverage. If a miss-and-flee vehicle is identified after it flees and the vehicle is uninsured, it is clear that the identified uninsured miss-and-flee vehicle does not fall within sec. 632.32(4)(a)2.b. but is an uninsured motor vehicle within sec. 632.32(4)(a)1. and that the claimant could recover under his or her policy notwithstanding the fact that there was no physical contact.

The only reason why a combination of "unidentified" and "no physical contact," as in this case, should cause a vehicle to be outside the scope of uninsured motorist coverage is to prevent fraud. As I explained previously, I find the fraud argument unpersuasive.

In light of the language of sec. 632.32(4)(a), the legislative history, and the legislative purpose, I conclude that a "miss-and-flee" vehicle is either a "hit-and-run" vehicle or an "uninsured motor vehicle." I would therefore reverse the circuit court and hold that the insurance policy requiring physical contact is unenforceable since it conflicts with the uninsured motor vehicle statute. Accordingly, I dissent.

Fortunately the Wisconsin legislature can amend sec. 632.32(4)(a) and disavow the interpretation set forth in the majority opinion. Unfortunately legislative action will come too late for Michael Hayne.

I am authorized to state that JUSTICE LOUIS J. CECI joins this dissent.