Gary **MELIN**, Respondent,

v.

Richard **JOHNSON**, Appellant.

No. C4–85–1834.

Court of Appeals of Minnesota.

May 20, 1986.

Review Denied July 31, 1986.

James R. Carlson, Rochester, for respondent.

Frederic N. Brown, James M. Lehman, Daniel L. Ruffalo, Rochester, for appellant.

Heard, considered and decided by PARKER, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Respondent Gary Melin sued his insurance agent, appellant Richard Johnson, for damages resulting from appellant's negligence and misrepresentation in the pro-

curement and sale of insurance to respondent's business. The jury returned a special verdict finding fault, causation, and damages on the negligence claim but finding no misrepresentation. Applying the trial court's instruction on damages, the jury awarded damages equaling the difference between the amount of insurance benefits supposedly represented by Johnson and the benefits actually received by Melin. The damage award was reduced by 31%, the amount of negligence attributed to Melin by the jury. Johnson appeals from the trial court's order denying his blended motion for judgment notwithstanding the verdict or a new trial. We reverse.

## FACTS

Respondent Melin, age 44, has suffered from coronary artery disease with atherosclerosis since 1970. In 1974 he had triple bypass surgery. His condition became disabling in July 1982 and he was forced to stop working.

Melin owns Master Cleaners and Upholsterers, Inc., a business with ten employees. Appellant Johnson is an insurance agent who wrote several group insurance policies for Master Cleaners employees, beginning in 1977. In November 1981, Melin and Johnson discussed the possibility of obtaining an individual long-term disability insurance policy for Melin. Johnson told Melin he was not insurable because of his preexisting heart condition. However, Johnson told him it might be possible to obtain coverage for him through a group policy for the employees of Master Cleaners. Melin asked him to investigate that possibility.

In December 1981, Johnson conducted an informational meeting for Master Cleaners employees, where he reviewed with them their existing insurance benefit package. Melin appointed two employees to act as representatives during subsequent discussions with Johnson. By February 1982, Johnson had narrowed his search to two plans and he met with the representatives to explain the benefits that each plan offered. An enrollment meeting was con-

ducted in April, and Johnson and Melin met privately before the meeting to discuss the policies. Subsequently, Melin and the other nine Master Cleaners employees enrolled in Plan 240, one of the plans Johnson had proposed, effective May 1, 1982; Johnson had learned that he could not offer the second policy, Plan 1040, because two employees were not eligible for that plan.

Both Plan 240 and Plan 1040 had limited benefits for disabilities resulting from preexisting conditions. Plan 1040 provided benefits for 12 months. Under the 240 Plan, if a disability from a preexisting condition occurred within 24 months of the purchase date, the benefits were limited to 30 percent of the insured's income and would only continue for six months.

There was conflicting evidence as to the coverage information given by Johnson to Master Cleaners employees and the information the employee representatives gave to Melin. Johnson testified that in April, Melin had said he understood the two plans being considered. When they finally talked about Plan 240 Melin only asked if he was covered, and Johnson answered affirmatively. Melin did not ask if the benefits were any different for disabilities resulting from preexisting conditions and Johnson did not volunteer any information about reduced benefits. There is no evidence that Johnson discussed reduced benefits with Melin under either plan.

When Melin became disabled approximately two months after purchasing the insurance, he received only the reduced benefits provided under Plan 240. Believing he was entitled to benefits totaling 60% of his income for five years, Melin brought suit against Johnson, alleging both negligent procurement of insurance and misrepresentation. At trial, the court instructed the jury on damages without distinguishing between misrepresentation and negligence, as follows:

> The measure of damages in this particular case is the amount of benefits as represented by [Johnson] with respect to the Combined long-term disability policy,

minus the benefits [Melin] actually received.

The jury found no misrepresentation but found for Melin on the negligence claim and, following the damage instruction given by the trial court, computed damages of $77,376. Because the jury also found Melin had been 31% negligent and his negligence was a direct cause of his loss, the trial court reduced the damages in proportion to his negligence, to $53,389.44. Johnson appeals from the trial court's denial of his motions for judgment notwithstanding the verdict or, in the alternative, for a new trial.

## ISSUE

Does any competent evidence support the jury's verdict?

## ANALYSIS

■ Appellant contends that Melin has failed to prove a valid cause of action. To examine that claim we must determine whether there is any competent evidence on the record to reasonably sustain the jury's verdict. *See Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975). In reviewing this purely legal question, we must view all the evidence in the light most favorable to the verdict and may not weigh the evidence or judge the credibility of the witnesses. *Lamb v. Jordan*, 333 N.W.2d 852, 855 (Minn.1983). If the evidence is practically conclusive against the verdict or if reasonable minds could reach but one conclusion against the verdict, then that verdict must be overturned. *Seidl*, 305 Minn. at 507, 232 N.W.2d at 239.

■ The jury found Johnson was negligent "with respect to procuring and selling group long-term disability income insurance for Master Cleaners and Upholsterers, Inc." It also found that Johnson's negligence was a direct cause of loss to Melin.

The record indicates two theories of negligence were at issue. First, Johnson was allegedly negligent in procuring the insurance policy for Melin. Johnson owed a duty to Melin as insurance agent to principal:

An insurance agent has the duty to exercise the standard of skill and care that a reasonably prudent person engaged in the insurance business will use under similar circumstances. [cites omitted]. In the absence of a contractual undertaking by the agent or broker to provide insurance, the agent or broker has no legal duty toward an insured beyond that specifically undertaken by him or her.

*Johnson v. Farmers & Merchants State Bank*, 320 N.W.2d 892, 898 (Minn.1982). Without some evidence that reasonable care would have produced a better policy, there is no breach of duty under this doctrine.

Johnson's duty was to obtain a group long-term disability policy for Master Cleaners employees; Johnson fulfilled that duty. The policy covered disabilities resulting from preexisting conditions such as Melin's heart ailment. Factors such as the small size of the business limited the options, and there was no evidence that a better policy was available. If the jury's verdict was based on the theory that Johnson was negligent in his duty to procure insurance, the evidence is conclusive against that verdict.

Second, Johnson was allegedly negligent in failing to inform Melin of limitations contained in the insurance policy he procured. This failure does not mean Johnson misrepresented the policy's provisions but that he failed to correct Melin's known expectations. The evidence supports a finding of a breach of the duty to inform Melin of important and relevant terms of the policy. As the trial court properly instructed the jury,

[n]egligence is the doing of something which a reasonable person would not do or the failure to do something which a reasonable person would do under like circumstances.

A reasonable person who knew, as Johnson did, of Melin's expectations for full disability benefits despite his preexisting condition would have informed Melin of the substan-

tial limitations that applied when the disability from a preexisting condition occurred within two years of the date of purchase.

However, there is no evidence that Johnson's negligence in this regard was a direct cause of Melin's loss. The breach of duty does not result in Melin suffering the loss of his bargain unless there was evidence of other available coverage, and there was no such evidence. The only evidence indicates that the purchase of this policy brought Melin's search for other coverage to a halt. That, however, is not a prima facie showing that other coverage was available. To the contrary, uncontradicted testimony of two expert witnesses indicates other coverage was not available, or would have been difficult to obtain. Understandably, there is little incentive to provide insurance to those whose preexisting conditions may result in claims for benefits before a significant amount of premiums have been paid. Likewise, as is shown by the fact that Melin was not at all insurable on an individual basis, it was unreasonable for Melin to expect to find generous benefits for himself through a small group policy.

Johnson asserts that *Backus v. Ames*, 79 Minn. 145, 81 N.W. 766 (1900) is controlling. We agree. *Backus* describes the rule that when "a broker undertakes to place insurance for another, it is his duty, in case he is unable to do so, to seasonably notify his principal," and states that the reason for the notice requirement "is to afford the principal an opportunity to secure, if he can, insurance elsewhere." *Id.* at 149, 81 N.W. at 77. However, the failure to give notice is

> immaterial if, as a matter of fact, the plaintiff would have been unable to have placed the insurance, even if notice had been given. The failure to give the notice, in such a case, would not be the proximate cause of the plaintiff's damages; hence it would be immaterial.

*Id.* The rule from *Backus* is applicable here, where all the evidence indicates that Melin would not have been able to secure other comparable insurance, without regard to whether Johnson notified him of the policy's limitations. Johnson's negligence in failing to fully inform Melin was not the proximate cause of Melin's damages.

■ Finally, appellant asserts that the jury's verdict must be set aside due to instructions from the trial court. First, the trial court instructed the jury to disregard as irrelevant any evidence of whether there "was or was not another long-term disability policy in existence that would have paid greater benefits than the Combined policy which was purchased." As appellant contends, evidence of other coverage was critical to the case. The uncontroverted evidence that no better coverage was obtainable eliminates the theory of negligent procurement and the element of causation for the theory of negligent failure to inform. The trial court's instructions permitted the jury to find causation when, as a matter of law, causation did not exist.

Second, the trial court provided the jury with only one damage instruction, one applicable to misrepresentation but not to negligence. *See Whitney v. Buttrick*, 376 N.W.2d 274, 280 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn.1986) (Minnesota rule of "out-of-pocket" damages limits negligence recovery to the difference between what the plaintiff parted with and what he received). However, because we find as a matter of law that Melin could not recover from Johnson under a negligence theory, the review of this instruction by the trial court is not essential to our decision in the case.

### DECISION

Because appellant's fault was inconsequential as a matter of law, the jury's verdict is not sustained by the evidence and must be overturned.

Reversed.