**BEAUTY CRAFT SUPPLY & EQUIPMENT COMPANY,**
Appellant,

v.

**STATE FARM FIRE AND CASUALTY INSURANCE COMPANY, et al.,**
Respondents.

**No. C3–91–733.**

Court of Appeals of Minnesota.

Jan. 14, 1992.

Review Denied March 19, 1992.

Eric J. Magnuson, Richard J. Nygaard, Chloethiel W. DeWeese, Rider, Bennett, Egan & Arundel, Minneapolis, for appellant.

R.D. Blanchard, William M. Hart, Meagher & Geer, Minneapolis, for respondents.

Considered and decided by FORSBERG, P.J., and CRIPPEN and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Appellant Beauty Craft commenced this action against respondents State Farm and Michael Nelson, a State Farm agent, alleging Nelson breached a duty to recommend employee dishonesty coverage when he sold a State Farm insurance policy to Beauty Craft in 1985. The trial court ruled that Nelson had no duty to advise Beauty Craft of the availability of employee dishonesty coverage. We affirm.

## FACTS

Beauty Craft (BC) is a wholesaler selling to beauty salons. Max Wexler (Wexler), who is a lawyer, has been involved in BC since 1968. In 1981 his mother, Sidora Wexler, began to transfer control of BC to him.

Michael Nelson has sold various insurance policies to Wexler and his mother since the later 1970s and, for a two-year period ending in 1980, BC purchased insurance from Nelson.

In 1983 and 1984, BC was insured by Transamerica. During that time, BC sustained a fire loss at one of its locations. That loss was not fully reimbursed because of a loss allocation formula in Transamerica's policy.

When the Transamerica policy came up for renewal, BC asked several insurance agents, including Nelson, to bid for BC's business. Along with the letter requesting bids, the agents were sent copies of the declarations pages from the Transamerica insurance policy. Nelson asked to meet with Wexler, but was told that none of the agents would be allowed to meet with the Wexlers; each of the agents was to submit a written proposal.

In order to submit his bid Nelson needed to inspect one of BC's facilities. By chance, Wexler was there at the time and Nelson and Wexler had a brief conversation, lasting from five to fifteen minutes. The conversation focused on Wexler's dissatisfaction with the loss allocation formula in the Transamerica policy. Wexler testified that he told Nelson:

> I want a policy that doesn't have any formulas. I want complete coverage. I want a no questions asked policy. I don't want any hassles. If I have a loss, I want it to be taken care of. And he said that he would take care of that for me and I also told Mike [Nelson] that * * * if he had recommendations, to let me know.

From the bids submitted, a spreadsheet listing the cost of each coverage was prepared. Although Nelson's bid was not the lowest, Wexler gave BC's business to Nelson based on their prior dealings.

In October 1986, BC discovered that several of its warehouse employees were stealing products. Wexler contacted Nelson regarding the loss and was informed that the policy did not provide employee dishonesty coverage. For an annual premium of $350, BC could have obtained $50,000 of employee dishonesty coverage from State Farm that would have covered most of the loss.

BC commenced the present action, alleging Nelson was negligent in failing to recommend employee dishonesty coverage and seeking to hold State Farm liable under the theory of respondeat superior.

At trial, the jury was asked to answer the following special verdict question:

1. At the time of the purchase and renewal of the State Farm policy, did Maximillion Wexler lack sufficient education, training, and experience to un-

derstand business insurance coverages?

The jury answered the question "no."

BC had objected to the use of this question, arguing it was overbroad and unclear. During its deliberations, the jury asked for clarification of the phrase "to understand." The trial court stated it meant "to know that various risks of loss in his business required particular insurance coverages."

The jury found that Wexler relied on Nelson regarding the types of insurance coverage BC should have; that Nelson knew Wexler was relying on him; that BC needed employee dishonesty coverage; and that Nelson had reason to know BC needed such coverage. Finally, the jury found both Nelson and Wexler negligent for failure to provide employee dishonesty coverage; they found Nelson 80 percent negligent and Wexler 20 percent negligent.

Based on the jury's answer to special verdict question number one regarding Wexler's background, the trial court held that Nelson had no duty to advise Wexler regarding employee dishonesty coverage and ordered judgment in favor of State Farm and Nelson. BC challenges this holding, and respondents have filed a notice of review.

### ISSUE

Did the trial court err in determining Nelson had no legal duty to recommend employee dishonesty coverage to Wexler?

### ANALYSIS

1. *Standard of Review*

■ BC argues that the jury findings establish that Nelson had a duty to advise Wexler regarding employee dishonesty coverage. Whether Nelson had such a duty is a question of law for the court to determine. *Johnson v. Urie,* 405 N.W.2d 887, 891 n. 5 (Minn.1987). The existence of a duty may turn upon disputed facts. When the facts are disputed, it is for the jury to determine the underlying facts; the legal determination of whether a duty exists remains a question for the court. *Id.*

2. *Nelson's Duty*

■ Ordinarily, an insurance agent's duty to an insured is limited to the duties imposed by any agency relationship, that is, to act in good faith and to follow instructions. *Gabrielson v. Warnemunde,* 443 N.W.2d 540, 543 (Minn.1989) (citing 16A J. Appleman, *Insurance Law and Practice,* § 8836, at 64 (1981)).

■ Where "special circumstances" are present, an insurance agent may be under a duty to take some affirmative action, such as offering, furnishing, or advising regarding insurance coverage, rather than merely following the instructions of the client. *Urie,* 405 N.W.2d at 889–90; *Osendorf v. American Family Ins. Co.,* 318 N.W.2d 237, 238 (Minn.1982); *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* 366 N.W.2d 271, 279 (Minn.1985).

■ Factors that may create a duty for an agent to update a policy include the agent's knowledge that the insured is unsophisticated in insurance matters, that the insured is relying on the agent to provide appropriate coverage, and that the insured needs the protection at issue. *See Gabrielson,* 443 N.W.2d at 544.

■ The present case presents no special circumstances that could impose a duty on Nelson to design BC's insurance coverage. Wexler did not delegate authority to Nelson to determine what insurance coverages BC needed. Instead, he sent a copy of his existing coverage to several insurance agents and requested competitive bids *based on BC's existing policy.* Further, the agents were not permitted to discuss their proposals with Wexler.

BC points to Wexler's request for "full coverage," contending that this request creates an obligation on the part of the agent to recommend and obtain all appropriate coverages. We cannot agree with this contention. Full coverage here seems to mean only coverages consistent with the Transamerica policy.

"Special circumstances" may arise when the insured delegates decision-making authority to the agent and the agent acts as

an insurance consultant. The brief conversation between Nelson and Wexler did not create such "special circumstances."

A comparison of the actions taken by Nelson and those taken by Glenn Muehlstedt, an insurance consultant later employed by Wexler, illustrates the absence of "special circumstances" as to Nelson. Muehlstedt was retained for the specific purpose of determining what insurance coverages were appropriate for BC. Muehlstedt met with Wexler on several occasions and examined BC's books and business practices. After submitting a written proposal, Muehlstedt met with Wexler to discuss the proposal. This contrasts sharply with the facts of this case, where there were competitive bids based on existing coverage and a brief, chance meeting.

The trial court correctly held that Nelson had no duty to recommend additional coverages. There being no duty, Nelson could not be held liable for failing to recommend employee dishonesty coverage.

### 3. *Jury Verdict Question*

Among the factors considered in *Osendorf* for holding the agent liable was the insured's lack of sophistication in insurance matters. *Gabrielson*, 443 N.W.2d at 544. The trial court in the present case, therefore, asked the jury whether Wexler "lack[ed] sufficient education, training, and experience to understand business insurance coverages." The jury found he did not.

BC argues that this question on the special verdict form should have been limited to whether Wexler knew about employee dishonesty coverage, rather than whether he was capable of educating himself about such a coverage. But how the question was phrased is irrelevant. Wexler cannot ask an agent to provide a competitive bid, decline to meet with the agent, fail to inform himself of the appropriate coverages, and expect the agent to determine what insurance coverage is needed. *See Louwagie v. State Farm Fire & Cas. Co.*, 397 N.W.2d 567, 569 (Minn.App.1986), *pet. for rev. denied* (Minn. Feb. 13, 1987) (insured is

responsible to educate himself in insurance matters).

Based on our disposition of this matter, we do not reach the issues raised in respondents' notice of review.

### DECISION

An insurance agent cannot be held liable for failure to recommend and obtain a specific coverage when an insured has not given the agent responsibility for determining appropriate coverages.

Affirmed.