Vickie L. **KLIMSTRA**, Plaintiff,

v.

**STATE FARM AUTO. INS. CO.**, an Illinois corporation licensed to do business in Minnesota, and **LeRoy Granstrom**, individually, Defendants.

Civ. No. 3–94–410.

United States District Court,
D. Minnesota,
Third Division.

March 27, 1995.

---

John T. Buchman, Soucie and Buchman, Anoka, MN, for plaintiff.

Gary Hoch, Meagher and Geer, Minneapolis, MN, for defendant Granstrom.

R.D. Blanchard, Meagher and Geer, Minneapolis, MN, for defendant State Farm.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

### INTRODUCTION

This matter arises out of an automobile accident involving Plaintiff Vickie Klimstra ("Klimstra") wherein an unidentified motor vehicle allegedly forced Klimstra off the road, causing severe injury. The unidentified vehicle did not physically contact Klimstra's automobile. State Farm Automobile Insurance Company ("State Farm") has refused coverage based on the absence of physical contact. Klimstra claims that her Wisconsin State Farm insurance policy, containing uninsured motorist ("UM") coverage, should insure the "miss and run" accident. Klimstra also claims that Defendants State Farm and Minnesota State Farm Agent LeRoy Granstrom ("Granstrom") were negligent for failing to inform her of the reduced coverage under her Wisconsin policy when she moved from Minnesota to Wisconsin.

Defendants respond that under Wisconsin law, the UM coverage does not include miss and run accidents. Further, they contend that agent Granstrom had no affirmative duty to counsel Klimstra regarding differences in coverage under the Wisconsin policy. Before the Court are the parties' cross-motions for summary judgment. For the following reasons, Defendants' motions for summary judgment will be granted and Plaintiff's motion will be denied.

### BACKGROUND

#### A. Plaintiff's Move to Wisconsin

Until May, 1991, Klimstra was a Minnesota resident, living with her parents in Anoka, Minnesota. Between 1982 and 1988 Klimstra's parents insured her on their State Farm automobile policy issued through the Granstrom Agency. State Farm issued Klimstra an automobile policy, again through the Granstrom Agency, in 1989. Her last Minnesota policy covered the period between February 11 and August 11, 1991. The Minnesota policy contained the following provision:

Change of Residence * * *

When the change of location is from one state to another and you are a risk still

acceptable to us at the time you notify us of the change, we shall replace this policy with the policy form currently in use in the new state of garaging. The word "state" means one of the United States of America.

Defendants' Joint Appendix at 343 ("JA").

In May 1991, Klimstra informed Barb Daly, insurance secretary at the Granstrom Agency, of the possibility that she might move to Wisconsin. Daly informed Klimstra that their office could not write policies in Wisconsin and that Klimstra would have to "initiate a transfer" with a Wisconsin agent. Daly Dep. p. 29. Klimstra understood that "there might be different laws, different requirements" in Wisconsin. Plaintiff's Dep. at 23. Daly sent Klimstra an automobile policy status computer printout listing premium and policy limits. The printout lists the Minnesota premiums and limits for various types of coverage. It does not contain the terms or conditions for the different coverages. Daly wrote the following note on the bottom of the computer printout: "We don't have access to Wisconsin rates—they might be lower but don't know—you probably would want to take these into an agent to compare—note 10% accident free rate should be included in the quote from new agent." Daly Dep.Ex. 2. Daly also included a note reading, "Vickie—please keep us posted on what you're doing. Thanks." *Id.* Klimstra did not contact the Granstrom Agency again concerning her move or her automobile policy.

In May 1991 Klimstra moved to Wisconsin. On June 4, 1991, She contacted the Charles Smader Agency in LaCrosse. Charles Smader is an exclusive State Farm agent. Klimstra spoke with Nancy Gregerson, the insurance secretary, stating that she wanted the "same" coverage she had under her Minnesota policy. Gregerson prepared an insurance application, checking the box marked "Trans" and leaving the boxes marked "new" and "Reins" blank. Gregerson informed Klimstra that Wisconsin requires insureds to purchase medical payments coverage for medical expense benefits rather than "PIP" coverage offered in Minnesota. Klimstra selected $25,000 in medical payment insurance.

Gregerson also informed Plaintiff that because her Wisconsin premium was approximately $90.00 lower than her Minnesota premium, she could purchase $100,000 of uninsured motorist coverage, instead of the $25,000 in UM coverage she had under her Minnesota policy. Neither the Granstrom Agency nor the Smader Agency informed Klimstra of any differences in UM coverage in the Minnesota and Wisconsin policies.

The Smader Agency initiated coverage to become effective June 11, 1991, Plaintiff's twenty-fifth birthday, on which date she qualified for a lower premium rate. Plaintiff states that although she knew her Wisconsin policy became effective on June 11, 1991, she was unaware that her Minnesota policy terminated on that same date. Klimstra Dep. p. 24. Klimstra elected to apply her unearned premium from the Minnesota policy to pay the initial premium on her Wisconsin policy. *Id.* at 25. She understood that by applying the unearned Minnesota premium to her Wisconsin policy, she "wouldn't have to pay any money until a later date." *Id.* at 25–26.

Charles Smader sent Plaintiff's policy application to the State Farm Regional Office on June 5, 1991. After receiving a declarations page from the regional office, Smader mailed the State Farm Automobile Policy form to Klimstra along with insurance identification cards and a premium notice. The notice required Klimstra to pay her premium by August 11, 1991.

## B. Uninsured Motorist Coverage in Minnesota and Wisconsin

The dispute in this case centers on a difference in UM coverage in Minnesota and Wisconsin for a "hit and run" accident. The parties also dispute whether the difference in coverage results from different policy language in each state or from the operation of each state's law on those policies. Klimstra's Minnesota policy provided:

UNINSURED MOTOR VEHICLE COVERAGE U * * *

We will pay damages for bodily injury and insured is legally entitled to collect from

the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle. Uninsured Motor Vehicle—means

\* \* \* \* \* \*

2. a "hit and run" motor vehicle or motorcycle whose owner or driver remains unknown and which was the proximate cause of bodily injury to an insured.

JA at 316. Klimstra's Wisconsin policy provides the following UM coverage:

We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle. Uninsured Motor Vehicle— means:

\* \* \* \* \* \*

2. a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes:

a. the insured or

b. the vehicle the insured is occupying and causes bodily injury to the insured.

JA at 363.

Minnesota courts have interpreted the Minnesota policy to provide coverage for miss and run accidents, while Wisconsin courts have interpreted the Wisconsin policy to require physical contact between the uninsured motorist and the insured.

### C. The Accident

On August 4, 1991, while driving on Highway 162 from Cashton, Wisconsin to Onalaska, Wisconsin, Klimstra was involved in an automobile accident. Klimstra alleges that as she proceeded around a curve in the highway, another car came toward her in her lane. To avoid a head-on collision, Klimstra turned off the road. Her car rolled, throwing Klimstra from the car. When it came to rest, the car pinned her underneath. The exhaust system burned Klimstra, causing third and fourth degree burns. The car which forced her off of the road did not physically strike Klimstra's automobile.

Klimstra was hospitalized and received medical care at St. Francis Hospital in LaCrosse, Wisconsin.

While in the hospital, Plaintiff recalled that her State Farm automobile premium was due on August 11, 1991. Her father, Roger Klimstra, brought the premium notice to her in the hospital. Plaintiff paid the amount stated in the notice, $271.30 after the $94.65 transfer credit from her Minnesota premium, by August 11. The premium totaled $5.74 more than the amount quoted to Plaintiff by Gregerson in the initial policy application.

After the accident, Plaintiff notified the Smader Agency and submitted a claim for her medical pay benefits. State Farm paid Plaintiff $25,000 under the medical payments coverage in her Wisconsin policy. State Farm refuses to provide benefits to Klimstra under the UM provision because the policy does not cover miss and run accidents.

Klimstra claims that she is entitled to the full $100,000 of her uninsured motorist coverage although the unidentified automobile which forced her off the road did not physically strike her or her car. She commenced this action against State Farm and Granstrom, alleging that State Farm, through its agents, owed and breached a duty to inform her of differences in automobile coverage resulting from the transfer of her policy from Minnesota to Wisconsin. All parties have moved for summary judgment on the issues of the UM coverage and the duty owed to Plaintiff by State Farm and Agent Granstrom.

### DISCUSSION

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of establishing the nonexistence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. at 2552–53; *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op.*, 838 F.2d 268, 273 (8th Cir.1988). Once it meets that burden, the non-moving party may not then "rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If, based upon the evidence, a reasonable jury could not return a verdict for the non-moving party, summary judgment is appropriate. *Id.* at 248, 106 S.Ct. at 2510.

## II.  CHOICE OF LAW

### A.  Actual Conflict

■ The court's first task in choice of law analysis is to determine whether an actual conflict exists between the application of one state's law over the other's. *Jepson v. General Casualty Co. of Wisconsin*, 513 N.W.2d 467, 469 (Minn.1994). Defendants argue that the application of Minnesota law to Plaintiff's policy results in coverage for the miss and run accident, while application of Wisconsin law to the policy does not. Klimstra argues that because Wisconsin law permits insurers to provide more than the minimum coverage required by statute, the two states' laws do not conflict.

■ The Minnesota Supreme Court has held that the physical contact requirement constitutes an impermissible restriction of the coverage mandated by the Minnesota uninsured motorist statute, Minnesota Statute section 65B.49, subd. 4. *Halseth v. State Farm Mutual Automobile Ins. Co.*, 268 N.W.2d 730, 732 (Minn.1978). In *Halseth,* the court reviewed several insurance policies, all defining a "hit-and-run" vehicle as "a land motor vehicle which causes bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a vehicle which the insured is occupying at the time of the accident." *Id.* at 731. The court evaluated this condition in light of the uninsured motorist statute, which mandates insurance coverage for hit-and-run motor vehicles.

The court held that the term "hit-and-run" encompasses the situation where an unidentified motor vehicle is involved in an accident and flees the scene, irrespective of whether the vehicle physically contacts the insured's automobile. *Id.* at 732. A physical contact requirement would contravene the purpose of the uninsured motorist statute, to "confer on automobile liability policyholders benefits against uninsured motorists in no less amounts than such policyholders would have realized against insured motorists." *Id.* (quoting *Brunmeier v. Farmers Ins. Exchange*, 296 Minn. 328, 208 N.W.2d 860, 862 (1973)). Under Minnesota law, therefore, no physical contact between the uninsured motorist and the insured must occur for UM coverage to apply.

Wisconsin courts have reached a different conclusion. Reviewing the UM coverage provision in a Wisconsin policy in light of Wisconsin's uninsured motorist statute, the supreme court held that the physical contact requirement was consistent with the minimum coverage mandated by statute. *Hayne v. Progressive Northern Ins. Co.*, 115 Wis.2d 68, 339 N.W.2d 588, 591 (1983). The Wisconsin uninsured motorist statute mandates insurance for the protection of persons operating an uninsured motor vehicle. The statute, in turn, defines "uninsured motor vehicle" as including "[a]n unidentified motor vehicle involved in a hit-and-run accident." Wis.Stat. § 632.32(4). The supreme court found the term "hit-and-run" clear and unambiguous, including, under the common and accepted definition, an element of physical contact. According the term its plain meaning, the court held the statute applicable only to accidents involving physical contact. *Hayne,* 339 N.W.2d at 590–91.

*Hayne* was recently followed in *Wegner v. Heritage Mutual Ins. Co.*, 173 Wis.2d 118, 496 N.W.2d 140 (Ct.App.1992). In *Wegner,* the unidentified vehicle caused a van to hit the insured's vehicle, which then ran off the road and struck a railroad crossing tower. The plaintiff attempted to distinguish *Hayne* on the grounds that the accident involved a "hit" between her automobile and the van. The *Wegner* court concluded, however, that the unambiguous language of the Wisconsin

uninsured motorist statute requires physical contact between the insured and the unidentified vehicle. *Id.* at 144.

The UM provision in Klimstra's Wisconsin policy in effect on the date of the accident is identical to those provisions at issue in *Hayne* and *Wegner*. Despite these decisions enforcing the physical contact requirement, Klimstra maintains that Minnesota and Wisconsin laws are not in actual conflict because Wisconsin does not *preclude* more than minimum coverage in an insurance policy. *See Nicholson v. Home Ins. Cos.*, 137 Wis.2d 581, 405 N.W.2d 327, 336 (1987) ("An insurance policy may expand but not reduce the coverage required by the uninsured motorist statute.").

■ Regardless of whether Wisconsin permits expanded coverage, Klimstra's policy defines "uninsured motor vehicle" as "a 'hit-and-run' land motor vehicle" which "strikes" the insured or the insured's vehicle. Even without the term, "strikes," Wisconsin courts interpret the term "hit-and-run" unambiguously to require physical contact. *Hayne*, 339 N.W.2d at 591. Application of Wisconsin law to Klimstra's Wisconsin policy, therefore, results in no coverage for Klimstra's miss and run accident. Minnesota and Wisconsin laws are thus in conflict and the court must engage in choice of law analysis.

## B. Minnesota Choice of Law Analysis

■ In analyzing a conflicts of laws case, Minnesota applies Professor Leflar's five choice influencing factors. *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973). They are: 1) predictability of result; 2) maintenance of interstate order; 3) simplification of the judicial task; 4) advancement of the forum's governmental interest; and 5) application of the better rule of law. *Id.* at 412.

The first factor, predictability of result, was recently discussed at length in *Jepson*. *Jepson* involved an automobile accident in Arizona. The insured sought to apply Minnesota law, although all but one of the vehicles covered under the policy were registered in North Dakota, the premiums were calculated at North Dakota rates, and the policy included a North Dakota Amendment and Endorsement.

In analyzing the predictability factor, the court stated:

> The heart of the bargain between the insurer and the insured is the coverage the insured purchased. The parties enter into the insurance contract with the expectation that, should a dispute arise, the legal system will endeavor to give each side the benefit of their bargain. To the extent the choice of law in this case contributes to giving the parties the benefit of their bargain, it enhances the predictability of the parties' contractual arrangements. * * * In considering the bargain between Jepson and General Casualty, we note it was based on a number of factors that could only reflect a mutual expectation that they had negotiated a North Dakota insurance contract. The insurance policy covered named insureds at a North Dakota address and North Dakota registered and titled vehicles. The premium charges for the coverage were calculated at North Dakota rates. These circumstances suggest what the parties' reasonable expectations should have been at the time of contracting.

*Id.* at 470–71.

In the present case, Klimstra knew that her Minnesota insurer could not issue a policy in another state and that she had to contact a Wisconsin agent to obtain a policy in Wisconsin. She knew that Wisconsin rates, laws and requirements might be different. Klimstra resided in Wisconsin and engaged a Wisconsin insurance agency to issue her automobile insurance policy. Her premiums were calculated at Wisconsin rates. The parties' mutual and reasonable expectations could only be that they were entering a Wisconsin contract. The predictability of results factor clearly favors application of Wisconsin law.

The maintenance of interstate order factor serves "to maintain a coherent legal system in which the courts of different states strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong." *Jepson*, 513 N.W.2d at 471. This factor requires that the state whose laws are applied have sufficient connection

with the facts at issue. *Hague v. Allstate Ins. Co.,* 289 N.W.2d 43, 48 (Minn.1979), *aff'd,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). Here, Wisconsin has significantly more contacts to this action than does Minnesota. At the time of the accident, Klimstra resided in Wisconsin, worked and drove in Wisconsin, garaged her vehicle in Wisconsin, and obtained a Wisconsin insurance policy from a Wisconsin agency. As stated in *Jepson,*

> Minnesota does not have an interest in encouraging forum, shopping, particularly where we would be sending a message to those people living on our borders to take advantage of the benefits our neighboring states offer in terms of lower insurance rates, lower vehicle registration fees, and sales taxes, and then, if they are injured, take advantage of Minnesota's greater willingness to compensate tort victims. * * * North Dakota has the authority to regulate the terms of insurance for vehicles licensed and titled in that state. We interfere with the sovereignty of a sister state when we make our law available for people who seek Minnesota benefits which burdening the North Dakota insurance rate base and regulatory system.

*Id.* at 472.

Similarly, Minnesota would interfere with the Wisconsin's sovereignty by offering its law in a case where it has significantly less interest than Wisconsin. Maintenance of interstate order favors the application of Wisconsin law.

Simplification of the judicial task does not apply to this analysis as the court could apply without difficulty the law of either state.

The forth consideration is the significant interest of the forum. Although Minnesota has an interest in compensating tort victims, "we also believe that people should get the benefit of the contracts they enter into, nothing less, and nothing more." *Id.* Because the parties clearly bargained for a Wisconsin contract, Minnesota's interest in compensation does not factor strongly in favor of the application of Minnesota law.

■ A court need not reach the final factor, the better rule of law, where the preced-

ing four factors clearly dictate the application of one state's law. *Myers v. Gov't Employees Ins. Co.,* 302 Minn. 359, 225 N.W.2d 238, 241 (1974); *Hime v. State Farm Fire & Casualty Co.,* 284 N.W.2d 829, 834 (Minn. 1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). Because the Court finds the choice influencing factors overwhelmingly favor application of Wisconsin law, it will not reach the better rule of law consideration.

In sum, the Court holds that Wisconsin law applies to the interpretation of Plaintiff's Wisconsin automobile policy.

## II. PHYSICAL CONTACT REQUIRED UNDER WISCONSIN LAW

■ As discussed *supra* pages 8–10, the operation of Wisconsin law to Plaintiff's UM provision results in no coverage for a miss and run accident. Although under Minnesota law, the physical contact requirement is unenforceable as violating Minnesota's uninsured motorist statute, the contact requirement is enforceable under Wisconsin law. *See Hayne,* 339 N.W.2d at 590–91. While the Wisconsin policy legally could have expanded UM coverage to encompass miss and run accidents, it did not. Because no physical contact occurred between the unidentified motorist and Plaintiff, the accident is not covered under the UM provision of Klimstra's Wisconsin policy.

## III. DUTY

■ Plaintiff alleges that State Farm and Granstrom were negligent in failing to inform her of the differences in UM coverage between Minnesota and Wisconsin law. Plaintiff contends that because she expected the "same" coverage in her Wisconsin policy that she had under her Minnesota policy, Granstrom breached his duty by not informing her of the "reduction" in coverage under the Wisconsin policy.

### A. Expert Testimony Regarding Legal Duty

Plaintiff offers the testimony of its expert, Andrew Whitman, on the issue of an insurer's legal duty. Whitman states in his affida-

vit that State Farm and Agent Granstrom had and breached a legal duty to inform Klimstra of the reduction in coverage. Defendants argue that Whitman's testimony usurps the court's function by making a legal determination. The Court agrees that Whitman's testimony cannot establish a legal duty.

As the court stated in *Gabrielson v. Warnemunde*, 443 N.W.2d 540 (Minn.1989),

> The testimony of the experienced insurance agent that [the defendant] did not exercise the necessary skill and care in renewing [the insured's] policy, while important in establishing a standard of care, does not by itself establish a legal duty to exercise that care for the benefit of the insured.

*Gabrielson*, 443 N.W.2d 540, 545 (Minn.1989). *See also Reitzner v. State Farm Fire and Cas. Co.*, 510 N.W.2d 20, 25 (Minn.Ct.App. 1993) ("The expert testimony would be more relevant if there were a legal duty. We conclude that because there was no special relationship or special circumstances, [the defendant] had no legal duty other than to follow directions. There is no evidence [the defendant] failed to follow directions."). The existence of the insurance agent's legal duty is a question of law for the court. *Johnson v. Urie*, 405 N.W.2d 887, 891 n. 5 (Minn.1987).

### B. Legal Duty of Insurance Agents

Insurance agents have a duty "to exercise the standard of skill and care that a reasonably prudent person engaged in the insurance business [would] use under similar circumstances." *Johnson v. Farmers & Merchants State Bank*, 320 N.W.2d 892, 898 (Minn.1982). As stated by the supreme court in *Gabrielson*,

> An insurance agent's duty is ordinarily limited to the duties imposed in any agency relationship, to act in good faith and follow instructions. * * * Absent an agreement to the contrary, an agent has no duty beyond what he or she has specifically undertaken to perform for the client. * * * Thus, the agent is under no affirmative duty to take other actions on behalf of the client if the typical principal-agent relationship exists.

*Gabrielson*, 443 N.W.2d at 543 (citations omitted).

A duty may be imposed on an insurance agent to act affirmatively on behalf of a client where special circumstances are present. *Id.* Such special circumstances exist where "the insured delegates decision-making authority to the agent and the agent acts as an insurance consultant." *Beauty Craft Supply & Equipment Co. v. State Farm Fire and Casualty Ins. Co.*, 479 N.W.2d 99, 100–01 (Minn.Ct.App.1992).

In *Beauty Craft*, the plaintiff, a wholesale company supplying beauty salons, purchased insurance from State Farm through its agent, Nelson. Beauty Craft had purchased insurance from Nelson in the past. In a brief conversation the representative of Beauty Craft told Nelson that he wanted "complete coverage." He further stated, " 'I want a no questions asked policy. I don't want any hassles. If I have a loss, I want it to be taken care of.' " *Id.* at 100.

Subsequently, Beauty Craft discovered that its employees were stealing products. The insurance policy, however, did not provide employee dishonesty coverage. For a $350 yearly premium, Beauty Craft could have obtained $50,000 in employee dishonesty insurance. *Id.*

Beauty Craft sued Nelson and State Farm for negligence in failing to recommend employee dishonesty insurance. The court held that no special circumstances existed to create a duty upon the agent to "design" Beauty Craft's insurance coverage. *Id.* at 101. Nelson did not act as an insurance consultant and was not delegated decision-making authority. Further, Beauty Craft's request for "complete coverage" created no obligation on Nelson to obtain all appropriate coverage. *Id.*

Similarly in this case, no special circumstances existed to create a duty on Granstrom other than to act in good faith and follow instructions. Although Granstrom had served as Klimstra's parents' State Farm agent for several years, the family delegated no decision-making authority to him. He did not contract to act as an insurance counselor

or consultant and did not hold himself out as such.

With respect to Klimstra's move to Wisconsin, she merely inquired of the Granstrom Agency whether she needed to do anything if she decided to move to Wisconsin. Based on this possibility, Barb Daly of the Granstrom Agency provided Klimstra a list of coverages and premiums. Daly informed Klimstra that she would have to contact a Wisconsin agent because the Granstrom Agency could not insure her in Wisconsin. In a note, Daly stated that they had no access to Wisconsin rates, but that Klimstra should take the Minnesota rates to her new agent to compare. She further requested that Klimstra keep the Granstrom Agency updated on her plans; however, Klimstra never contacted the Granstrom Agency again.

Granstrom acted as Klimstra's insurance agent, nothing more. He did not contract to serve as insurance counselor and Klimstra's inquiry regarding her move did not transform his role to one of counselor. The relationship between Klimstra and Granstrom fails, as a matter of law, to create the special circumstances necessary to impose a duty on Granstrom.

## C. Causation

■ Even assuming that a duty existed and was breached, Plaintiff has failed to establish the element of causation necessary to a claim of negligence. In a negligence action, a plaintiff must establish the following elements: 1) the existence of a duty; 2) its breach; 3) causation; and 4) damages.[1] *Johnson v. Urie*, 405 N.W.2d 887, 891 (Minn. 1987) (cause of action for negligence against insurance agent); *Lisa's Style Shop v. Hagen Ins. Agency*, 181 Wis.2d 565, 511 N.W.2d 849, 852 (1994) (same). The element of causation in an insurance case was addressed in *Melin v. Johnson*, 387 N.W.2d 230 (Minn.Ct.App. 1986). In *Melin*, the insured asked his agent to obtain a long-term disability insurance policy for him. The agent explained that due to a preexisting heart condition, the insured could not obtain individual insurance, but

perhaps could obtain group coverage through his business. The insured then formed a group of his employees and the agent procured a group policy. *Id.* at 231. The group plan provided only reduced benefits for disabilities from preexisting conditions. The agent failed to inform the insured of the reduced benefits. Subsequently, the insured became disabled; he sued the insurance agent for failing to inform him of the limited coverage. *Id.*

The court of appeals reversed a jury verdict for the plaintiff, finding that the agent's negligence did not cause the insured's loss. The court found no evidence of other available insurance coverage for preexisting conditions. Because the insured would not have been able to obtain other comparable insurance, with or without notification of the policy's limitations, any alleged breach of duty by the agent in failing to inform the insured of those limitations was not the proximate cause of the insured's damages. *Id.* at 233.

Here, Klimstra alleges that Granstrom had a duty to inform her that her Wisconsin insurance policy would not cover miss and run accidents. As discussed above, Wisconsin does not require insurers to offer miss and run insurance. Defendants submitted evidence in the form of expert testimony that no Wisconsin insurer offers miss and run coverage. Delopst Aff., JA at 358. Defendants' expert, Randy Delopst, is a licensed Wisconsin insurance intermediary. He examined the automobile insurance policies of twenty insurance carriers with the greatest market shares in the Wisconsin insurance market. Based upon his review, he concludes that miss and run uninsured motorist coverage was not available in Wisconsin in 1991. *Id.*

Plaintiff submits no evidence contradicting Delopst's testimony or establishing that miss and run coverage is available in Wisconsin. The evidence is undisputed, therefore, that Klimstra could not have obtained a Wisconsin policy offering miss and run coverage even had Granstrom informed her of this limita-

---

1. Plaintiff's damages are likewise questionable. Under her Minnesota policy, Plaintiff purchased $25,000 of UM coverage. Plaintiff recovered that amount, however, under the medical benefits provision of her Wisconsin policy.

tion. Because miss and run coverage was not available in Wisconsin, any alleged breach of duty did not cause Plaintiff's damages.

### D. An Insurer's Duty Under *Fire Watch*

Klimstra also argues that Defendants breached a duty by unilaterally reducing her coverage when she "transferred" her policy from Minnesota to Wisconsin. She relies on *Canadian Universal Ins. Co., Ltd. v. Fire Watch,* 258 N.W.2d 570, 575 (Minn. 1977), and its progeny for the rule that an insurer has an affirmative duty to notify the insured of a reduction in coverage; failure to provide notice of the reduction renders it void.

The rule articulated in *Fire Watch,* however, applies "when an insurer by renewal of a policy or by an endorsement to an existing policy substantially reduces the prior insurance coverage." *Id. See Midway Nat'l Bank v. Bollmeier,* 474 N.W.2d 335, 339 (Minn.1991) (exclusion added to existing policy without notification held void); *Campbell v. Ins. Serv. Agency,* 424 N.W.2d 785, 790 (Minn.Ct.App.1988) (unilateral reduction of coverage upon renewal found void for lack of notice).

In this case Klimstra did not renew her Minnesota policy. The Granstrom Agency informed Klimstra that they could not issue insurance in Wisconsin. Granstrom did not even have access to Wisconsin rates. Ms. Daly of the Granstrom Agency told Klimstra to compare the Minnesota and Wisconsin coverages with her "new agent" in Wisconsin. Further, her Minnesota policy contained the following provision:

Change of Residence * * *

When the change of location is from one state to another and you are a risk still acceptable to us at the time you notify us of the change, we shall *replace* this policy with the policy form currently in use in the new state of garaging. The word "state" means one of the United States of America.

(emphasis added).

Klimstra filled out a new insurance application in Wisconsin with a Wisconsin agent.

Even assuming Defendants referred to the transaction as a "transfer," she did not affect a *renewal* of her Minnesota policy. Klimstra knew she was applying for a Wisconsin policy with Wisconsin rates. She was aware that the laws and regulations might be different. Klimstra terminated her Minnesota policy and replaced it with a Wisconsin policy.

Moreover, the Wisconsin policy issued by the Wisconsin State Farm agent did not "reduce" Klimstra's coverage. The policy provides UM coverage. In fact, at the agent's suggestion, Klimstra purchased $100,000 in UM insurance rather than the $25,000 she had obtained under her Minnesota policy.

The difference in coverage with respect to miss and run accidents results from operation of state law on the policy rather than a modification in the policy itself. Although the Wisconsin policy defines "hit-and-run" as including a vehicle which "strikes" the insured, while the Minnesota policy includes the term "hit-and-run" but not "strikes," the presence of the term "strikes" is not determinative of the difference in coverage between the two states.

In *Halseth,* the Minnesota Supreme Court analyzed the Minnesota uninsured motorist statute to determine whether it mandated miss and run coverage. The supreme court analyzed the phrase "hit and run" in the statute and broadly defined it to encompass a miss and run accident.

The Wisconsin Supreme Court similarly analyzed the phrase "hit-and-run" in its UM statute. *See Hayne,* 339 N.W.2d at 590–91. Unlike the Minnesota Supreme Court, the *Hayne* court found the term "hit-and-run" clear and unambiguous, by definition requiring physical contact. On this basis, the court found the striking requirement to comply with the minimum coverage mandated by statute. The differences in UM coverage result, therefore, from the differences between the two states in defining "hit-and-run." Regardless of the inclusion of the term "strikes," Wisconsin construes a hit-and-run accident to include physical contact.

Because Plaintiff has failed to show both that Defendants unilaterally modified her

policy upon renewal and that they actually reduced her coverage, the *Fire Watch* rule does not apply to invalidate the Wisconsin miss and run limitation.

## V. REFORMATION

Klimstra also seeks reformation of her Wisconsin insurance policy to eliminate the "striking" requirement. A court may reform a written contract where the following elements are proved by clear and convincing evidence:

> 1) there was a valid agreement between the parties expressing their real intentions; 2) the written instrument failed to express the real intentions of the parties; and 3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

*Nichols v. Shelard Nat'l Bank,* 294 N.W.2d 730, 734 (Minn.1980). "Absent ambiguity, fraud or misrepresentation, a mistake of one of the parties alone as to the subject matter of the contract is not a ground for reformation." *Id.*

Klimstra argues that the parties agreed to miss and run coverage by virtue of Klimstra's statement that she wanted the "same" coverage, but that the policy issued by State Farm contained a reduction in coverage.

Plaintiff provides no grounds for reformation of her Wisconsin policy. There was no mutual mistake. The parties contracted for uninsured motorist coverage, which the Wisconsin policy provided. As discussed above, operation of Wisconsin law rather than the policy itself results in the differences in UM coverage. The parties had no mutual understanding not expressed in the contract. Finally, Klimstra alleges no fraud or inequitable conduct by Defendants. Absent mutual mistake or fraud, reformation is not appropriate.

### CONCLUSION

Based upon all files, records and proceedings in this matter and for the reasons stated above, Plaintiff's motion for summary judgment (Doc. No. 57) is **DENIED WITH PREJUDICE.** Defendants State Farm and Granstrom's motions for summary judgment (Doc. Nos. 12 and 25) are **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE.**