Gregory **SEMANKO**, Plaintiff,

v.

**MINNESOTA MUTUAL LIFE INSURANCE COMPANY,**
Defendant.

**No. 97–CV–516.**
**MDL No. 1186.**

United States District Court,
D. Minnesota.

. Aug. 25, 2000.

Heidi M. Drewes–Silton, Minneapolis, MN, Charles Harley Johnson, Johnson & Associates, St. Paul, MN, Garrett Dennis Blanchfield, Jr., Reinhardt & Anderson, St. Paul, MN, for plaintiff.

Wayne S. Moskowitz, Gary J. Haugen, Maslon Edelman Borman & Brand, Minneapolis, MN, Garold M. Felland, The Minnesota Mutual Life Insurance Company, St. Paul, MN, James F. Jorden, Waldemar J. Pflepsen, Jr., Jorden, Burt, Boros,

Cicchetti, Berenson & Johnson, Washington, D.C., for defendant.

## ORDER

DOTY, Senior District Judge.

This matter is before the court on defendant's motion for summary judgment. Based on a review of the file, record and proceedings here, and for the reasons stated, the court grants defendant's motion for summary judgment.

## BACKGROUND

Plaintiff Gregory Semanko purchased a $750,000 adjustable life policy issued by defendant Minnesota Mutual Life Insurance Company in 1995 and sold by agent Jeffrey Jarnes, Semanko's first cousin. The policy, a conversion from an earlier term life policy Semanko had purchased from Minnesota Mutual, was issued with a $6,000 annual premium. The policy provided that premium payments were to be made through April 30, 2022. *See* Policy at 1A (Def.Dep.Ex.29).

At the time the policy was issued in 1995, Semanko paid an initial premium of $6,000 and a "non-repeating premium" of $30,000. Additional funds in the amount of $369.00 were credited to the Policy as a result of the conversion of the earlier policy. In 1996, Semanko made another premium payment of $6,000. These payments represent the only out-of-pocket payments Semanko has made on the policy. The premiums for 1997, 1998, and 1999 were paid by reducing the face value of his policy.

On February 18, 1997, Semanko filed a class action complaint similar to the complaint in *Parkhill v. Minnesota Mutual Life Insurance Co.*. This case was then consolidated with *Parkhill* and several other cases by the federal multidistrict litigation panel. On August 13, 1999, this court issued an order denying class certification in the lead *Parkhill* case. *See* 188 F.R.D. 332 (D.Minn.1999).

In his complaint, Semanko alleges 13 claims against Minnesota Mutual: (1) fraud; (2) fraudulent inducement; (3) breach of contract; (4) breach of fiduciary duty; (5) breach of duty to deal with insured in good faith; (6) negligence; (7) negligent misrepresentation; (8) unjust enrichment and imposition of constructive trust; (9) deceptive trade practices in violation of Minn.Stat. § 325D et seq.; (10) false advertising in violation of Minn.Stat. § 325F.67; (11) consumer fraud in violation of Minn.Stat. § 325F.68 et seq.; (12) declaratory relief; (13) reformation. After a period of discovery, Minnesota Mutual now moves for summary judgment on all Semanko's claims.

## DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252, 106 S.Ct. 2505.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *See id.* at 250, 106 S.Ct. 2505. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *See id.* at 322–23, 106 S.Ct. 2548.

## B. Dismissal for Failure to Identify Misrepresentation

■ Under Minnesota law, both common law and statutory actions based on fraudulent or negligent misrepresentation require proof that a misrepresentation of fact was made. *See In re Petition for Disciplinary Action Against Strid,* 487 N.W.2d 891, 893 (Minn.1992) (fraud); *Florenzano v. Olson,* 387 N.W.2d 168, 173 n. 3 (Minn.1986) (negligent misrepresentation); *LensCrafters, Inc. v. Vision World,* 943 F.Supp. 1481, 1488 (D.Minn.1996) (statutory claim for deceptive trade practices requires evidence of false statement of fact); Minn.Stat. § 325F.68–70 (consumer fraud claim requires "fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice"); Minn. Stat. § 325F.67 (requiring false statement in advertising). Semanko's claims for fraud, fraudulent inducement, breach of fiduciary duty, negligence, negligent misrepresentation, deceptive trade practices, false advertising, and consumer fraud are all based on his allegation that Minnesota Mutual agent Jarnes made express representations to him at the time of sale that his insurance policy would become self-funding on a date certain. *See* Compl. ¶ 2.

However, Semanko has failed to provide the kind of specific evidence necessary to support his allegation under Rule 56. Semanko's deposition is virtually the only evidence submitted by plaintiff in opposition to summary judgment. However, an examination of this testimony reveals that Semanko lacks any useful recollection of the fundamental facts underlying his claims.

First, Semanko cannot recall where, when, or under what circumstances the alleged sales presentation was made by Jarnes:

It might have been over the telephone. It might have been at a social gathering. It might have been bumping into him. He might have come over to visit my kids. I might have been chatting with him. We might have been at a hockey game sitting next to each other.

*Id.* at 62.

Second, Semanko cannot remember how the presentation was made, stating that Jarnes "might have had charts. He might not have. . . . I don't know about the stuff he showed me." *Id.* Semanko also remembers "seeing some illustrations someplace at sometime. I don't remember when. I don't remember how I got it, and I don't remember if I had a hard copy of if I just looked at one, and I don't know how it came." *Id.* at 197. Semanko acknowledges, however, that the first time he saw illustrations may have been around the time the complaint was filed. *See id.* at 123.

Third, Semanko cannot testify to the specific content of Jarnes's alleged misrepresentation. He does not recall the number of years Jarnes told him he would have to make premium payments before they became self-funding. He states only that "somewhere 10 [years] keeps coming into my head. . . . I keep thinking that, but I'm not sure what it was." *Id.* at 277. He

does not specifically attribute this notion to Jarnes, however, and at another point in his deposition he engages in the following colloquy:

Q. What I would like to know is how many years were you told you would need to pay of premium?

A. I don't remember. He told me if I put a lump sum down at the beginning, made some payments, it would take care of itself.

Q. Did he use the word "several," do you know?

A. I don't remember.

Q. Did he ever identify a specific number of payments?

A. I don't remember.

*Id.* at 59. Further, Semanko does not know if Jarnes ever used the term "guarantee" in discussing how long he would have to pay a premium or if Jarnes ever talked to him about interest. *Id.* at 62–64; 263. The most specific memory Semanko has of his meeting with Jarnes is this:

I asked him a couple, three times point blank, is this better than the term I got, are you 100 percent sure I should be doing this.

He said yes, without a doubt. That was it. I did it. It was over.

*Id.* at 62. In short, Semanko's testimony contains only (1) speculation about what Jarnes might have told him concerning his premium payment obligations under the policy and (2) his recollection that Jarnes told him that the new policy would be a good deal. As Semanko summarized his encounter with Jarnes: "At that time, I'm not sure what I knew." Semanko Depo. at 221.

Under Rule 56, this is simply not enough. Without specific evidence of an actual misrepresentation, Semanko's claims for claims for fraud, fraudulent inducement, breach of fiduciary duty, negligence, negligent misrepresentation, deceptive trade practices, false advertising, and consumer fraud cannot survive summary judgment. *See, e.g., Avery v. Solargizer International, Inc.,* 427 N.W.2d 675, 682 (Minn.Ct.App.1988) (affirming summary judgment on fraud claim where plaintiff could not remember the substance of conversation with defendant).[1]

## C. Breach of Contract

Likewise, Semanko's amorphous testimony concerning his communications with Jarnes cannot support a claim for breach of contract. No reasonable factfinder could infer from the record that Semanko and Jarnes reached an oral agreement on a term of insurance different from the terms expressly provided in the policy. *See Aberman v. Malden Mills Industries, Inc.,* 414 N.W.2d 769, 771 (Minn.Ct.App. 1987) (insufficient evidence of contract formation where plaintiff "resorts to characterizing [defendant's] statements according to his best recollection"); *Greater Kansas City Laborers Pension Fund v. B.E.A.M.,* 754 F.2d 297, 298 (8th Cir.1985) (finding "impressions and assumptions" of a witness concerning an alleged oral agreement were "too thin a reed to support a finding that a contract was made").

Moreover, even if such evidence existed, it would be barred by the parol evidence rule, "which makes inadmissible evidence concerning discussions prior to or contemporaneous with the execution of a

---

1. As Minnesota Mutual points out, Semanko's negligence claim is also barred by the economic loss rule. *See Transport Corp. of Am., Inc. v. IBM Corp., Inc.,* 30 F.3d 953, 956 (8th Cir.1994) (under Minnesota law, economic loss rule bars recovery under negligence that arise out of business transactions unless personal injury or damages to other property is involved).

written instrument when that evidence contradicts or varies the terms of the written instrument." *See Gutierrez v. Red River Distributing, Inc.*, 523 N.W.2d 907, 908 (Minn.1994) (quotations and citation omitted). Here, Semanko's policy contains an integration clause specifically stating that the written policy is "the entire contract between you and us" and that "[n]o agent or other person has the authority to change or waive any provisions of your policy." The policy also specifically provides that a premium of $6,000 per year is required to provide the $750,000 death benefit to age 71, or through April 30, 2022. Thus, any alleged representation by Jarnes that Semanko's premium obligations will end prior to 2022 would directly contradict the terms of the written agreement, thereby triggering application of the parol evidence rule.[2]

 Finally, the alleged oral agreement between the parties is barred by the statute of frauds. Minnesota courts will not enforce an oral agreement that, by its terms, is not to be performed within one year from its making. *See* Minn.Stat. § 513.01(1); *Worwa v. Solz Enterprises, Inc.*, 307 Minn. 490, 238 N.W.2d 628, 631 (1976) (holding that summary judgment appropriate where the oral agreement "plainly cannot be performed within 1 year"). In this case, Semanko alleges that he and Jarnes reached a special oral agreement concerning the multi-year funding of his policy. Because this agreement by its terms could not be performed within one year, and because it was not memorialized in any written form, it is unenforceable as a matter of law.

---

**2.** In *Parkhill v. Minnesota Mutual Life Insurance Co.*, 995 F.Supp. 983 (D.Minn.1998), this court allowed the parties to proceed to discovery on a breach of contract claim arising of an alleged extra-policy oral representation concerning the expected *source* of the premium payments, an issue that was not specifi-

## D. Breach of Duty to Deal with Insured in Good Faith

 Under Minnesota law, a cause of action for breach of the implied duty of good faith and fair dealing does not exist independently of a breach of contract claim. *See Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 256 (8th Cir.1994) (applying Minnesota law); *Orthomet, Inc. v. A.B. Medical, Inc.*, 990 F.2d 387, 392 (8th Cir.1993) (same). For the reasons discussed above in Part C, the court has concluded that plaintiff's breach of contract claim is not viable. Thus, as a matter of law, the court must dismiss plaintiff's claim of breach of the duty to deal with the insured in good faith.

## E. Equitable Claims

The court must also dismiss Semanko's equitable claims. With respect to the claim for declaratory relief, Semanko has failed to establish liability on any of his underlying substantive claims. With respect to the reformation claim, Semanko has failed to establish by clear and convincing evidence that the contract failed to express the true intentions of the parties. *See Klimstra v. State Farm Auto Ins. Co.*, 891 F.Supp. 1329, 1339 (D.Minn.1995) (setting forth the standard for reformation under Minnesota law).

 Finally, with respect to the unjust enrichment claim, plaintiff cannot show that Minnesota Mutual "knowingly received or obtained something of value for which the defendant 'in equity and good conscience' should pay." *ServiceMaster of St. Cloud v. GAB Business Services, Inc.*,

---

cally addressed in the policy. *See id.* at 989. Here, however, the alleged oral agreement deals not with the source of premiums payments but with the duration of premium payments, an issue specifically addressed in the policy.

544 N.W.2d 302, 306 (Minn.1996). In requiring Semanko to pay annual premium amounts, Minnesota Mutual acted in strict accordance with the terms of the policy, which expressly provided that the policyholder is obligated to pay annual premiums. There is, of course, nothing unjust about Minnesota Mutual receiving premium payments in exchange for providing life insurance coverage.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment is granted.

2. Plaintiff's complaint is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**